JESSE POLLARD ET AL. *v.* ZONING BOARD OF APPEALS OF THE CITY OF NORWALK ET AL.

HEALEY, PARSKEY, ARMENTANO, SHEA and DALY, Js.

Argued November 13, 1981—decision released January 5, 1982

*Robert A. Fuller,* with whom was *Louis S. Ciccarello,* for the appellants (defendants Robert Vadas et al.).

*Vincent D. Flaherty,* with whom, on the brief, was *Thomas J. Ryan,* for the appellees (plaintiffs).

ARTHUR H. HEALEY, J. The defendants Robert Vadas and Donald Vadas have appealed from a judgment of the Superior Court overruling a decision of the Norwalk zoning board of appeals granting a variance of a lot width requirement to the defendants.

The defendants are beneficiaries of the estate of Nellie J. Hodges. For many years, the decedent owned a certain parcel of land known as No. 8 Camp Street in Norwalk upon which her one family house was located. This property, when acquired by Nellie J. Hodges and her husband James H. Hodges, was described in the deed as having a frontage on Camp Street of "one hundred feet more or less." The property is located in a C-Residence zone which allows one and two family houses to be constructed on lots with a minimum width at the street frontage of fifty feet.[1]

Following the death of Nellie J. Hodges, the executrix of her estate, Maysie Aussenhofer, hired a licensed surveyor, Dennis Deilus, to survey the

[1] Building Zone Regulations of the City of Norwalk, Conn., § 118.100, "Minimum Size of Plot, Width." (Am. 1979)

property for the purpose of subdividing it into two separate lots, each with a frontage on Camp Street of fifty feet. Deilus prepared a survey which subdivided the parcel into two lots. The lot containing the house was designated as No. 8 Camp Street and was shown on the Deilus survey map to have a frontage on Camp Street of 53.71 feet. The second lot, which was vacant, was designated as No. 6½ Camp Street and was shown on this map to have frontage on Camp Street of 50.03 feet.[2] The surveyor's map prepared by Deilus which indicated these measurements was dated June 2, 1977, and was filed in the Norwalk land records.[3]

The house and lot located at No. 8 Camp Street were subsequently sold to the plaintiffs Robert and Betsy Turner by warranty deed which referred to the Deilus subdivision map then filed in the Norwalk land records. On September 8, 1977, the executrix sold the vacant lot No. 6½, also by warranty deed which referred to the Deilus map, to Anthony Romano who later conveyed a one-half interest to his partner, Nicholas Spagnuolo. This parcel is the subject of the present litigation. The new owners, Romano and Spagnuolo, hired their own surveyors to survey the property in preparation for the commencement of construction on the vacant lot. These surveyors based their survey on the prior Deilus

[2] The total amount of frontage does not materially differ from the description in the deed by which Nellie J. Hodges and her husband acquired title which stated the frontage measurements as "one hundred feet more or less."

[3] In order to subdivide the property into two lots, it was necessary to acquire an initial variance from the Norwalk zoning board of appeals because the existing dwelling house was within the minimum side yard setback distance of six feet from the newly drawn property line. This variance was granted on July 7, 1977. Zoning Board of Appeals Case No. 77-0707-01. The disposition of this variance is not at issue here.

survey which was the only map on record at the time. While performing the survey, the owner of the adjacent property on the other side of No. 6½ Camp Street, Mrs. Katherine Russo of No. 6 Camp Street, notified the surveyors that they had staked the boundary line of No. 6½ Camp Street three feet onto her property. Russo called the surveyor's attention to a map of her property previously prepared by her own surveyor, Leo Leonard, and also showed them an iron pin driven into the ground which marked the boundary line between the two pieces of property. The line which the surveyors for Romano and Spagnuolo had staked was three feet inside her boundary line, marked by the iron pin. The map prepared by Leonard had not been recorded, nor was it disclosed to or discovered by Deilus.

Between September 12–14, 1977, and after Russo had informed the surveyor hired by Romano and Spagnuolo of the possible boundary line error, the vacant lot at No. 6½ was cleared and, after excavation, the concrete slab was poured and the blocks for foundation walls were erected. Since the foundation was placed approximately two feet inside what Russo claimed was her property line, she obtained an injunction prohibiting further work on No. 6½ Camp Street. It was eventually determined that Russo's survey was correct and that the Deilus survey was in error. This error left the lot at No. 6½ Camp Street with frontage of 46.40 feet and a width of 48.84 feet at the point 70 feet from the front line of the property, thereby resulting in a violation of the minimum frontage and side yard setback requirements.

On December 30, 1977, Romano and Spagnuolo applied to the Norwalk zoning board of appeals

seeking side yard setback and lot width variances in order to allow construction of a two family house. The applicants claimed hardship in that they "purchased a lot and constructed a foundation in reliance on professional engineering data" which later proved erroneous, obviously maintaining that they relied on the incorrect Deilus survey. Many residents opposed this application and the board denied the application on March 16, 1978, because "no hardship had been shown." [4]

On April 14, 1978, Romano and Spagnuolo again applied to the zoning board of appeals but only for a variance of the minimum lot width requirement, having subsequently decided to move the location of the structure to avoid the necessity of obtaining a side yard setback variance. This second application also differed from their first application in that a variance for only a single family house was sought in the second application. The applicants justified this second request for a variance on the grounds that "the surveyor for the Estate of Nellie Hodges created the error, and the parcel is now unbuildable unless the variance is granted." The board voted on a motion to deny the application on June 15, 1978. Two members voted in favor of this resolution and three voted against it. No other action was taken on this second application. [5]

In the meantime, Maysie Aussenhofer, the executrix of the estate of Nellie J. Hodges, was sued in a

[4] Zoning Board of Appeals Case No. 78-0119-01. The vote was 4-1 in favor of denial.

[5] Zoning Board of Appeals Case No. 78-0504-04. Our disposition of this appeal does not require that we reach the issue raised by the 2 to 3 vote on the resolution to deny the application. General Statutes § 8-7 requires the concurring vote of four members of a zoning board of appeals to grant a variance.

rescission action by Romano and Spagnuolo demanding return of the purchase price. As a result, Robert and Donald Vadas, as beneficiaries of the estate, reacquired the subject property from Romano and Spagnuolo.[6] On August 14, 1979, Robert and Donald Vadas applied to the board requesting a variance of the lot width requirements for the purpose of constructing a single family house.[7] The basis upon which the applicants claimed a hardship was that because of the surveyor's error, it would be "unfair to deny the owners the right to construct a one family house on the parcel of land" because, without the variance, the property would be useless. On September 20, 1979, after hearing similar arguments to those presented at the two previous hearings, the zoning board of appeals granted the requested variance by a 4-1 vote finding that "the hardship is an error created originally by a survey conducted by Mr. Deilus . . . ."

The plaintiffs are property owners adjacent to or located within one hundred feet of the subject property. See General Statutes § 8-8. They appealed the decision of the zoning board of appeals to the Superior Court alleging that the defendant zoning board of appeals acted illegally in reversing its

---

[6] Although the Vadas brief indicates that "the executrix of the [Hodges] estate was sued in a rescission action and required to reacquire the lot," the application filed August 14, 1979, and which is the subject of this appeal lists Romano and Spagnuolo as the "owner[s]" and Robert Vadas and Donald Vadas as the "applicant[s]." That application also indicates that after the rescission action was brought, the applicants (Vadas) filed a cross complaint against the surveyor Deilus and that in connection with the lawsuit the applicants "had repaid substantially all of the purchase price back to Romano and Spagnuolo, who still remain the legal owners of the property, subject to the final resolution of the lawsuit."

[7] Robert and Donald Vadas had previously applied for a similar variance on June 1, 1979, but this application was withdrawn after repeated postponements of the hearing.

previous denial of the variance application. The court sustained the plaintiffs' appeal finding that the zoning board could not reverse its previous decision "without a showing of a change in circumstances, and where the hardship was self created and consisted solely of a financial loss to the defendants Robert and Donald Vadas." From this judgment sustaining the plaintiffs' appeal, upon the granting of certification, the defendants Robert and Donald Vadas appealed to this court.

The defendants have basically set forth five claims of error. They argue: (1) that all of the necessary prerequisites for a variance were established; (2) that denial of the variance would amount to a confiscation of the property; (3) that the 2 to 3 vote to deny the second application was not a valid denial which would invoke the "material change in circumstances" test for successive applications; (4) that a 1977 amendment to General Statutes § 8-6 changes prior case law; and (5) that the trial court abused its discretion in substituting its judgment for that of the zoning board of appeals. Our resolution of the first of these issues is dispositive of this appeal.

The defendants' first claim is that the trial court erred in overruling the zoning board's decision because all of the prerequisites for the granting of a variance were satisfied. Specifically, the defendants claim that the trial court erred in finding that the defendant zoning board of appeals acted illegally in granting the variance where the only hardship shown was self-created and consisted solely of financial loss to the defendants Robert and Donald Vadas. "A local zoning board has the power to grant a variance under General Statutes § 8-6 (3) where two basic conditions are satisfied: '(1) the

variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan.' *Smith* v. *Zoning Board of Appeals,* 174 Conn. 323, 326, 387 A.2d 542 (1978)." (Footnote omitted.) *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 655, 427 A.2d 1346 (1980). The trial court, as part of its holding, found that part two of this test was not satisfied in that any alleged hardship was self-created. We agree.

In *Smith* v. *Zoning Board of Appeals,* supra, we stated that "[i]t is well settled that the hardship must be different in kind from that generally affecting properties in the same zoning district, and must arise from circumstances or conditions beyond the control of the property owner." Id., 327. "Where the hardship involved 'arises as the result of a voluntary act by one other than the one whom the variance will benefit, the board may, in the sound exercise of its liberal discretion, grant the variance.' *Belknap* v. *Zoning Board of Appeals,* 155 Conn. 380, 384, 232 A.2d 922 (1967). Where the claimed hardship arises from the applicant's voluntary act, however, a zoning board lacks the power to grant a variance. *Abel* v. *Zoning Board of Appeals,* 172 Conn. 286, 289, 374 A.2d 227 (1977); *Booe* v. *Zoning Board of Appeals,* 151 Conn. 681, 683, 202 A.2d 245 (1964); *Spalding* v. *Board of Zoning Appeals,* 144 Conn. 719, 722, 137 A.2d 755 (1957); *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 544, 45 A.2d 828 (1946). The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance; *Booe* v. *Zoning Board of Appeals,* supra; cf. *Devaney* v.

*Board of Zoning Appeals,* supra; *Highland Park, Inc.* v. *Zoning Board of Appeals,* 155 Conn. 40, 43, 229 A.2d 356 (1967); and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved. *Misuk* v. *Zoning Board of Appeals,* 138 Conn. 477, 481, 86 A.2d 180 (1952); *McMahon* v. *Board of Zoning Appeals,* 140 Conn. 433, 442, 101 A.2d 284 (1953); see *Berlani* v. *Zoning Board of Appeals,* 160 Conn. 166, 170, 276 A.2d 780 (1970)." *Whittaker* v. *Zoning Board of Appeals,* supra, 657–58. " '[S]elf-inflicted or self-created hardship . . . is never considered proper grounds for a variance.' 2 Yokley, Zoning Law & Practice (3d Ed.) § 15-8, p. 159." *Abel* v. *Zoning Board of Appeals,* supra, 289; see *Garibaldi* v. *Zoning Board of Appeals,* 163 Conn. 235, 239, 303 A.2d 743 (1972). We have recently addressed the "self-created hardship" exception for variances. In *Johnny Cake, Inc.* v. *Zoning Board of Appeals,* 180 Conn. 296, 300, 429 A.2d 883 (1980), we stated that "[w]here the applicant *or his predecessor* creates a nonconformity, the board lacks power to grant a variance." (Emphasis added.) See also *Kulak* v. *Zoning Board of Appeals,* 184 Conn. 479, 482, 440 A.2d 183 (1981).

The defendants claim that the self-created hardship rule does not apply here because, first, the hardship was caused by the surveyor, Deilus, and not the estate and, second, even if the surveyor's mistake were imputed to the estate, it should not be further imputed to them as beneficiaries of the estate. The defendants interpret the self-created hardship rule as applying only to the deliberate conduct or voluntary purchase of the subject property by the owner. In support of this claim, they point out that neither the executrix nor the defend-

ants themselves had knowledge of the defects in the Deilus survey until after the injunction was granted to Katherine Russo.

The fact that the surveyor, Deilus, and not the defendants or the executrix committed the error which resulted in the hardship is not critical. In *Highland Park, Inc.* v. *Zoning Board of Appeals,* supra, an error was made by a surveyor or foundation contractor, employed by the plaintiff corporation,[8] which caused a house to be constructed on a lot so that it was positioned in violation of the applicable zoning regulations. The zoning board of appeals denied a variance request saying that the condition underlying the appeal was "self-inflicted." The trial court dismissed the appeal. In sustaining the trial court upon appeal, we stated that "any hardship present in the situation is due to the property owner's own error, or the error of those employed by the owner, and does not arise from the application of the zoning regulations themselves." Id., 43.

At the time of Deilus' actions, the defendants were the legal owners of the subject property. "On the death of an owner, title to real estate at once passes to his heirs, subject to being defeated should it be necessary for the administration of the estate that it be sold by order of the court, and subject to the right of the administrator to have 'possession, care and control' of it during the settlement of the estate, unless the probate court shall otherwise

---

[8] The individual plaintiff-appellant in *Highland Park* was the principal stockholder, director, president and chief executive officer of the corporate appellant, Highland Park, Inc. See *Highland Park, Inc.* v. *Zoning Board of Appeals,* 155 Conn. 40, 42, 229 A.2d 356 (1967) ; see also Records & Briefs A-467, p. 117.

order. . . . The administrator does not have title to
the real estate; . . . his rights in it cease at the set-
tlement of the estate." *Brill* v. *Ulrey,* 159 Conn. 371,
375, 269 A.2d 262 (1970), quoting *O'Connor* v.
*Chiascione,* 130 Conn. 304, 306, 33 A.2d 336 (1943).
In short, an administrator does not have title to
real estate; in case of the death of the owner, title
to real estate at once passes to his heirs subject to
the right of administration. *O'Connor* v. *Chiascione,*
supra; see *Lundberg* v. *Kovacs,* 172 Conn. 229, 232n,
374 A.2d 201 (1977); *Bowen* v. *Morgillo,* 127
Conn. 161, 168, 14 A.2d 724 (1940); *Blodgett* v.
*Bridgeport City Trust Co.,* 115 Conn. 127, 144, 161
A. 83 (1932); 3 Locke & Kohn, Conn. Probate
Practice § 26. The trial court found that "[t]his
alleged hardship occurred after the death of Nellie
J. Hodges when the defendants Robert and Donald
Vadas acquired title to the parcel as devisees under
her will. As beneficiaries of the [e]state [sic] the
subdivision would result in a benefit to them, and
they cannot be treated as innocent victims of the
acts of the surveyor or fidicuariy [sic] of the
estate."

The hardship in this case arose as the result of
voluntary acts on behalf of one whom the variance
would benefit and, therefore, was self-created. See
*Highland Park, Inc.* v. *Zoning Board of Appeals,*
supra; *Deer-Glen Estates* v. *Board of Adjustment
& Appeal,* 39 N.J. Super. 380, 121 A.2d 26 (App.
Div. 1956).[9] The voluntary acts were those of the

---

[9] In *Deer-Glen Estates* v. *Board of Adjustment & Appeal,* 39 N.J.
Super. 380, 121 A.2d 26 (App. Div. 1956), the court affirmed the
rejection by the zoning board of appeals of the owner-applicant's
petition for a variance which claimed that the owner's architect made
a mistake in laying out the building on the premises which was
practically completed at the time the variance was sought. The
court found that the hardship complained of was "self-imposed" or

executrix,[10] for the benefit of the defendants, in employing the errant surveyor, in seeking to create a two lot subdivision, and in conveying the subdivided No. 8 Camp Street to the Turners so as to leave the defendants with an undersized lot.[11] The defendants cannot now disclaim the consequences of the executrix's actions when they were fully aware, as legal owners of the property, of the situation and would enjoy any benefits to be derived.[12] The defendants are not without remedy and, in fact, the record indicates that the estate and

"self-created" and that the owner could not successfully claim the mistake of the architect and his own negligence as the basis for granting a variance.

[10] The defendants have stated that the executrix and, ultimately, the defendants themselves should not be forced to bear the consequences of the independent contractor's mistake. In fact, it appears from the record that neither any party nor the trial court ever mentioned or raised this issue at trial. We have repeatedly stated that we will not consider claims of error unless there has been compliance with § 3063 of the Practice Book. *Burritt Mutual Savings Bank of New Britain* v. *Tucker*, 183 Conn. 369, 377, 439 A.2d 396 (1981); *Capozzi* v. *Luciano*, 174 Conn. 170, 173–74, 384 A.2d 359 (1978).

We note, however, that even if it were established that Deilus was an independent contractor for certain purposes, it would not preclude a finding that he was also an agent or employee of the executrix for other purposes arising out of the same relationship. See 41 Am. Jur. 2d, Independent Contractors §§ 2, 18; 19 A.L.R. 270, § 20; Restatement (Second), Agency § 2 (3).

[11] We have considered this latter act alone as sufficient justification for denying a variance application. See *Booe* v. *Zoning Board of Appeals*, 151 Conn. 681, 202 A.2d 245 (1964).

[12] Even if we assume, for these purposes only, that the executrix was a "predecessor" of the defendants, under *Johnny Cake, Inc.* v. *Zoning Board of Appeals*, 180 Conn. 296, 429 A.2d 883 (1980), we would reach the same conclusion that the defendants are barred from a variance by the self-created hardship rule. Since it cannot be denied that the executrix voluntarily hired the surveyor, she would be barred from obtaining a variance; see *Highland Park, Inc.* v. *Zoning Board of Appeals*, 155 Conn. 40, 229 A.2d 356 (1967). If a predecessor would be barred from obtaining a variance by his voluntary acts, then his successor would face a similar situation given the same set of circumstances. See *Johnny Cake, Inc.* v.

the surveyor are presently engaged in litigation. Obviously, any relief obtained by the estate will accrue to the defendants.

The defendants claim that this result is unfair because they had no knowledge of the errors in the Deilus survey and because the hardship arose from circumstances beyond their control. However, as between the defendants, on the one hand, who held legal title to the property, and the executrix, who hired the errant surveyor and conveyed the property away, and, on the other hand, the city of Norwalk, the zoning regulations of which have been violated, the burden must fall on the former two parties. "Personal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance." *Garibaldi* v. *Zoning Board of Appeals,* supra, 239–40. "It is not the function or responsibility of the board of appeals to seek ways to extricate [the applicant] from his self-created difficulties." 3 Yokley, Zoning Law and Practice (4th Ed.) § 21-5.

Since we find that any hardship was self-created, the zoning board was without power to grant a variance under any circumstances. *Kulak* v. *Zoning Board of Appeals,* supra, 482; *Booe* v. *Zoning Board of Appeals,* supra, 683. Therefore, we need not address the defendants' remaining claims of error.

There is no error.

In this opinion the other judges concurred.

<hr>

*Zoning Board of Appeals,* supra, 300; see also *George F. Barnes Land Corporation* v. *Board of Adjustment of Wyckoff Township,* 174 N.J. Super. 301, 416 A.2d 431 (1980) (affirming denial of variance finding claimed hardship was self-created where plaintiff's predecessor in title had caused the nonconformity from which the plaintiff sought relief by a variance).