[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the defendant Zoning Board of Appeals' approval in part and denial in part of the plaintiffs' application for a variance of the zoning regulations of the Town of Westport as they applied to the plaintiff's lot at 27 Spriteview Avenue in the Compo Beach section of Westport.
From the exhibits offered and affidavits submitted in conjunction with the hearing before this court, the plaintiffs have established that they were the owners of the subject property at the time the application for variance was filed and have remained the owners through the hearing. The court finds that the plaintiffs are aggrieved persons for the purpose of taking an appeal from that denial.
The plaintiffs acquired the subject property in July, 1987. The lot is legally non-conforming, being a 0.2291 acre lot in a Residence A (1/2 acre minimum) Zone. Most of the lots in the immediate Compo Beach section are non-conforming in area.
The house located on the lot at the time of the plaintiffs' purchase was also non-conforming in building coverage. The Regulations (13-6) limited building coverage for this zone to 15% of the lot area. The actual coverage of the existing building substantially exceeded that. The Regulations limited the total coverage of structures — including driveways, swimming pools, and similar constructs — on a lot in this zone to 25%. The total coverage exceeded that.
The lot is also located within a flood area. The existing first floor elevation was four feet lower than the elevation required to conform with the 100-year storm flood line in violation of Section 13-6 of the Regulations.
The plaintiffs intent on making substantial improvements to the structure, determined that in order to accomplish those improvements, they would have to demolish the existing structure and rebuild it so that its first floor elevation would be above the 100-year storm flood line. CT Page 991
In September, 1987, the plaintiffs applied for a zoning permit to demolish and reconstruct the house. An as built survey and building plans were submitted to the zoning enforcement officer in conjunction with the permit application.
The survey, dated May 12, 1987, showed a building coverage of 20.659%, conforming to the "footprint" of the existing house as shown on that survey. The survey also indicated a total coverage of 28.215% of the lot area. Since these coverages exceeded the coverage allowed for the zone in which the lot was located, the figures were of importance in rebuilding a non-conforming use
In 1987, Section 6.2 of the Zoning Regulations read, in pertinent part:
6.2 Non-Conforming Buildings and Structures
 "6-2.1 Expansion, Extension or Alteration No non-conforming building or structure may be expanded, extended, relocated or altered if such expansion, extension, relocation or alteration increase the degree to which the building or structure does not conform to any particular Requirements of the Zoning Regulations. All new construction shall be in accordance with these regulations."
This section apparently had been interpreted by the Westport Zoning Office to mean that a non-conforming use could rebuilt, relocated, or redistributed, in whole or in part, on a lot so long as the new coverage did not exceed the total existing coverage.
Zoning permit #21121 was as issued on September 14, 1987 with the condition that the building footprint would not be increased. The building coverage was indicated on the survey to be 20.659% of the lot area and the building plans accorded with that percentage. The building plans did not call for a deck appended to the rear of the house and steps thereto nor did the plans call for the construction of an in-ground swimming pool.
The evidence before the Board indicated that the surveyor who had prepared the survey submitted with the application for the zoning permit, prepared a second survey on which the building coverage and total coverage on the lot was recalculated. The amended survey was prepared for the plaintiffs on May 26 or 28, 1987. This showed the building coverage at 26.25% of lot area (an increase of 5.591%) and the total coverage at 32.77% of lot area (an increase of 4.555%). The difference in the building area was some 535 square feet. The reason for the difference was stated to be that the initial CT Page 992 survey did not include the existing eaves overhang on the building to be demolished.
The definition of "Building Coverage" in the Regulations states that: "Building coverage shall include the building area. . .". "Building Area" is defined as:
 "The maximum horizontal cross-section areas enclosed by and including the outside walls of a building on a lot together with the area of all porches, handicapped ramps, decks, balconies and other similar structural projections. The ordinary projection of entry platforms or steps; cantilevered roofs, eaves, cornices; chimneys; window sills or sun shades and similar incidental architectural features on lots of one-quarter acre (10,890 sq. ft.) in area or greater shall not be included within the building area or footprint, provided that such architectural features shall not project more than three (3) feet from the building wall or face. (amended 3-13-79, #204)"
Since this lot was less than one-quarter acre, the overhanging eaves would be included in computing building area and hence building coverage.
The evidence before the Board indicates that this second survey, although in existence at the time of the application for a zoning permit, was not submitted to the zoning authority at that time. The plaintiffs razed the existing building in November, 1987 and proceeded with construction of a building in conformity with the submitted plot and building plans.
At some point the plaintiffs determined they wished to modify the plans to add a deck and stairs to the rear of the premises and to install an in-ground swimming pool. Although advised by the Zoning Enforcement Officer in May, 1988, that such modifications would require the grant of a variance by the Zoning Board of Appeals, the plaintiffs applied for a zoning permit in July, 1988 on the basis that there had been an erroneous calculation of the building coverage on the original survey and that the calculation of actual coverage, including consideration of the overhanging eaves, left sufficient non-conforming coverage from the original structure to erect these items in accordance with Regulation 6-2.1. On this consideration of the revised plot plan, zoning permit # 21579 for the addition of the deck and stairs, but excluding the pool, was issued on July 7, 1988, by the Planning Officer of the Town of Westport acting as the Zoning Enforcement Officer.
A new Planning officer and Zoning Enforcement Officer CT Page 993 shortly afterward entered office. On August 12, 1988, the new Zoning Enforcement Officer revoked that permit and advised the plaintiffs that a variance would be necessary to add the proposed construction. The revocation was based primarily on the claim that the original permit limited coverage to a footprint of 20.659% based on the submitted survey computations. In addition, the zoning officer asserted she could not make any independent determination of the accuracy of the second survey and the effect of the eaves overhang because the building had been razed.
On October 11, 1988, the plaintiffs were heard by the Board of Appeals in an appeal (#4055) from the decision of the zoning enforcement officer revoking the permit. The Board denied the appeal and sustained the action of the zoning enforcement officer.
On October 31, 1988, the Zoning Commission of the Town of Westport adopted zoning amendment # 355, significantly altering Zoning Regulation 6.2. That regulation now reads (with the amendments underlined):
"6.2 Non-Conforming Buildings and Structures
"6-2.1 Expansion, Extension or Alteration No non-conforming building or structure may be expanded, extended, relocated or altered if such expansion, extension, relocation or alteration increase the degree to which the building or structure does not conform to any particular Requirements of the Zoning Regulations. All new construction shall be in accordance with these regulations.
"6-2.1.1 No non-conforming building or structure shall be relocated on the lot.
"6-2.1.2 No portion of any non-conforming building coverage on a lot shall be transferred from one location to another location on the lot.
"6-2.2.1.3 No portion of any non-conforming building coverage that is attributable to an open structure without a roof, such as a deck, balcony, open entry, handicapped ramp, swimming pool, tennis court, paddle tennis court, etc., shall be roofed over, enclosed or otherwise expanded, extended or altered from a structure into a building. (See definitions)."
The present application for a variance was filed by the plaintiffs on December 15, 1988.
The application sought CAM Review and a "variance of Sec. CT Page 9946-2.1.2 (non-conforming structure), to transfer and retain a portion of the original pre-existing non-conforming building coverage and a variance of Sec. 13-6 (coverage), to legalize the existing building coverage at 20.88%, and to increase the existing building coverage from that 20.88% to 25.75% (+ 4.87%) but reduce the pre-existing building coverage by 0.5%, and to increase the existing total coverage from 27.4 % to 32.26% (4.85%).but to reduce the former pre-existing total coverage by 0.5%, all to recapture 490 sq. ft. more or less of the original pre-existing non-conforming building coverage, in order to provide a 9' by 8' rear entrance deck with stairs and a 16' x 24' inground swimming pool."
The thrust of the plaintiffs' position was that the amendments to Regulation 6-2 had created a hardship not of the plaintiffs' creation. There was an error in computing the coverage made by the surveyor. That error was compounded by the original architect and builder. The plaintiffs were not aware of the significance of the corrected survey until a new architect advised them that they could erect a deck, stairs and pool within the scope of original legally non-conforming coverage. Since the corrected survey was accurate, it was the obligation of the Board to restore to the plaintiffs the right to utilize the full amount of that pre-existing coverage. In addition, the plan would, in fact, reduce the final amount of legally non-conforming coverage from that which had initially existed.
The Board of Appeals granted the application in part and denied the application in part. The decision of the Board was:
RESOLVED: "The Board voted 5 — 0. . . .that the request of John and Laurel Nolan, 27 Spriteview Avenue, for CAM Review and Variance of Sec. 6-2.1.2 (non-conforming structure), Sec. 6-3
(non-conforming lot), Sec. 13-6 (coverage), to increase the building coverage to 21.9% and the total coverage to 28.4%, in order to provide a 9' x 8' rear entrance deck and steps, in a Res. A zone (Assessor's Map" 5306, lot 202/203), be GRANTED in accordance with the plans filed ("Plot Plan for John Nolan, 27 Spriteview Ave., Westport, CT, property known as lots 90 and 91 on a certain map entitled Second Revised map of Saugatuck Shores at Saugatuck, CT, a scale one inch = 100 feet, March 30, 1930, by the Sandel W. Hoyt, Jr., Co., Inc. Said map bearing file no. 2430 in the office of the Norwalk Town Clerk. Scale: one inch = twenty feet, Date: May 12, 1987, Revised January 14, 1988, Revised June 20, 1988, Revised August 9, 1988," by Leo Leonard, Surveyor and subject to the following conditions:
A) Deck and steps are never to be enclosed. CT Page 995
FURTHER RESOLVED: "The Board voted 5 — 0 . . . to DENY the request to recapture 490 sq. ft. of the original pre-existing non-conforming building coverage in order to provide a 16' x 24' in-ground swimming pool. This request was denied because hardship was not proven, and it was an overly intensive use of the property."
The minutes of a meeting in work session on January 11, 1989, gave as a reason for granting the variance as to the deck and steps: "The hardship found for granting the variance for the steps and deck was found due to the need to provide ingress and egress to the rear of the property, which was overlooked due to a multitude of errors on the part of the applicant and their surveyor."
In appealing from this decision, the plaintiffs claim that the action of the defendant Board deprived them of coverage to which they were entitled under the applicable zoning laws and thereby decreased the value of their property. Specifically, the plaintiffs assert that the action of the Board is illegal, improper, arbitrary, and an abuse of its discretion in the following respects:
"a) To the extent that the Board failed to act upon the plaintiff's request to legalize the existing building coverage of 20.88% while at the same time granting a variance to increase the building coverage to 21.9%, the Board acted in an inconsistent manner;
"b) By reason of the Board's failure to act upon the plaintiffs' request to legalize the existing building coverage, the structure on the plaintiffs' lot will remain non-conforming unless and until the additional construction contemplated by the variance granted is completed;
"c) The action of the Board denying the plaintiffs' application to "recapture" 490 square feet of the 535.7 square feet of building coverage to which they are entitled, thereby reducing the original non-conformity, is not supported by the record;
"d) By granting a variance to increase the building coverage, the Board necessarily found that "unusual hardship or exceptional difficulty" had been demonstrated as required for the granting of a variance and, that being the case, the Board's denial of plaintiffs' request to recapture less than the full amount of the original coverage "because hardship was not proven and it was an overly intensive use of the property", is internally inconsistent, disingenuous, arbitrary and at odds with the governing Regulations; CT Page 996
"e) The Board ignored or failed to give proper significance to testimony at the hearing on the subject application by the new Planning Director who had authorized the revocation of the plaintiffs' revised zoning permit, to the effect that she was satisfied that the original non-conforming coverage to which the plaintiffs were entitled was 535.7 square feet more than was indicated on the original zoning permit, thereby supporting plaintiffs' application to recapture coverage to which they were entitled as of right and requiring the Board to find the existence of a "hardship" imposed by the enactment of Zoning Amendment No. 355 and to restore the original coverage to which the plaintiffs' were entitled as of right."
Certain rules have been established for a court to follow in considering an appeal from a grant or denial of a variance. In order for a Zoning Board of Appeals to grant a variance, two conditions must be met: (1) the variance must be shown not to substantially affect the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. Grillo v. Zoning Board of Appeals, 206 Conn. 362, 368, 537 A.2d 1030 (1988).
The hardship must be different in kind from that generally affecting properties in the same zoning district. Green v. Zoning Board of Appeals, 4 Conn. App. 500, 503-04, 495 A.2d 290
(1985).
The hardship which justifies a Board of Zoning Appeals in granting a variance must be one that originates in the zoning ordinance and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved. Self-inflicted or self-created hardship is never considered proper grounds for a variance. Abel v. Zoning Board of Appeals, 172 Conn. 286, 289, 374 A.2d 277 (1977). Where the Board denies a variance, the question on appeal is whether any of the reasons given is valid and supported by the record. Green v. Zoning Board of Appeals, 4 Conn. App. 500,502, 495 A.2d 290 (1985). Should a Board fail to state its reasons, the court must search the record to find the basis for the action taken, if any. In searching the record, the court may rely on any reason culled from the record which demonstrates a real or reasonable relationship with the general welfare of the community, in which case, the Board's decision should be upheld. Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 732-3,546 A.2d 919 (1988).
The principal thrust of the plaintiffs' appeal is that the amendments to Regulations 6-2.1 adopted on October 31, 1988, had CT Page 997 created a peculiar hardship for this property because the amendments prevented the plaintiffs from transferring any non-conforming building coverage from one location to another on the lot. This prevented them from applying the previously existing excess building coverage to the construction of the deck and steps and of the swimming pool.
The plaintiffs' property is a lot of less than one-quarter acre in a zone establishing a minimum lot size of one-half acre. The lot is a non-conforming lot within a neighborhood of non-conforming lots (Record, exhibit 33). The house on the lot was non-conforming in that it exceeded permissible building coverage and total coverage substantially. There was no evidence presented that this was unique to this property for this neighborhood. There was a claim that the house which was originally on the lot had large overhanging eaves, which was uncharacteristic for Saugatuck and which gave it the excess coverage which would have enabled the plaintiffs' to install the proposed additions. (Transcript, p. 6) However, this claim was disputed (Transcript, p. 35). Again, there was no evidence that substantial excess of legally non-conforming coverage was peculiar to this property in this neighborhood.
The hardship imposed by the amendments would fall equally on all legally non-conforming smaller lots with buildings that exceeded the allowed coverage; the owners of all such lots will also be deprived of the opportunity to apply the excess coverage to other locations on the lot.
This is not a situation where there was an application for a variance pending before the Board at the time the Zoning Commission adopted the regulations nor was it a situation where a zoning permit had been issued in contemplation of such relocation but had not been fully executed when the amendments were adopted.
While a second zoning permit had been issued authorizing the construction of the deck and steps, that permit was rescinded before the adoption of the amendments. The issue of the validity of that recission and the action of the Board in sustaining the recission is not before this court, except collaterally as evidence of the principal claim of hardship that there was a certain amount of transferable coverage applicable to the lot which was lost due to the error of the surveyor in computing the building coverage. Then as a result of that mistake, not of the plaintiffs' doing, that coverage was lost when the original zoning permit was issued. So, without that mistake, there would have been a permit issued based on a survey indicating the correct coverage at a time which would have allowed the transfer of coverage from one place to another CT Page 998 on the lot.
The plaintiffs' surveyor prepared a mistaken survey summary of the building coverage which was submitted, together with plans conforming to that mistaken coverage for the issuance of a permit which restricted the footprint of the coverage to that indicated on the survey. This was submitted by the plaintiffs' agents — architect and builder, although a "corrected" survey was in the possession of the plaintiffs well before the application for the permit and before the razing of the building. A self-inflicted hardship does not in itself justify a variance, Abel, supra. Nor can the plaintiffs remove themselves from the actions of their agents. The fact that a surveyor and not the applicants committed the error which resulted in the alleged hardship is not critical. Pollard v. Zoning Board of Appeals, 186 Conn. 32, 39-41, 438 A.2d 1186
(1982).
The principal effect of the alleged hardship was that the plaintiffs would be unable to install the proposed deck and steps and would be unable to install an in-ground swimming pool because any excess coverage could not be transferred.
The alleged hardship was mitigated by the Board's finding a hardship on an independent basis existed with regard to the installation of the deck and steps that would warrant a partial increase from the coverage authorized in the original permit. Moreover, this should alleviate the concern of the plaintiffs that they had continued construction under the rescinded zoning permit to such an extent that they had exceeded the authorized coverage under the first permit. The Board specifically increased the coverage to 21.9% to accommodate the proposed deck and steps.
The plaintiffs appear to claim that the Board must have found that the amendments created the hardship and that being so, the Board must restore the entire lost coverage, because the Planning Director had conceded, at the public hearing, the correct amount of lost coverage was that asserted by the plaintiffs. This is a peculiar argument. Moreover, an examination of the transcript shows that the plaintiffs' claim of concession is erroneous. In any event, the claim is not relevant, since the plaintiffs' never demonstrated the peculiar hardship that would relieve them from the application of the amendments in such a general way. It does not necessarily follow that having found a strict application of the amendments would create a hardship with regard to rear access to the house; the property should then be relieved entirely from all application of the amendments. CT Page 999
As to the swimming pool installation, the transcript demonstrates that the plaintiffs failed to demonstrate any unusual independent hardship for them in not being able to install a swimming pool and conceded there was no hardship for the pool except that resulting from any refusal to allow a recapture of the excess coverage for the lot. The reasons for the denial stated by the Board are sufficient to justify the denial.
For these reasons, the court finds that the plaintiffs have failed to sustain their burden of establishing that the action of the Board is illegal, improper, arbitrary and an abuse of its discretion.
The appeal is dismissed.
NIGRO, J.