[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the Hartford Zoning Board of Appeals on March 21, 1990, granting special permit and a variance from the municipal code governing the number of nozzles dispensing gasoline and denying such relief concerning building line requirements for a sign. The hearing on the appeal was held on May 3, 1991. The last brief was received on May 22, 1991.
On February 7, 1990, W. F. Shuck Petroleum Co. submitted an application to the Hartford Zoning Board of Appeals seeking a variance and a special permit for premises it leases at 125 New Britain Avenue. Timely notices by publication and posting were given and are undisputed. The CT Page 7735 application was reviewed by the commission on the city plan on March 6, 1990. By letter dated March 15, 1990, the commission reported favorably on all requests of the applicants except the building line requirements. The zoning board of appeals held a public hearing on the application on March 21, 1990. After hearing from representatives of the lessee defendant and the plaintiff as well as the defendant owner, the board unanimously approved the special permit and the variance to increase the number of nozzles to dispense gasoline. Those two approvals were confirmed by letter on March 22, 1990, and are the subjects of this appeal.
The defendant owner operated a garage and gasoline station on the subject premises until September or October, 1989. This facility had been granted on December 18, 1962, a special exception to operate a gasoline service station in a B-3 zone. A certificate of occupancy was issued on December 30, 1963. Over the years additional special exceptions were granted to permit general repair and sales of automobiles. At the ZBA hearing the defendant owner stated that he removed the gasoline storage tanks in September or October of 1989 to comply with the state requirements on removal of inground gasoline storage tanks over twenty years old. The plaintiff's representative stated that the tanks had been removed six months to a year before the March 21, 1990, hearing. The defendant owner stated that he never abandoned the sale of gasoline and had, in October 1989, renewed his annual license to sell gasoline. Although no date was given, the defendant owner also indicated that he had leased a portion of the premises to defendant Shuck Petroleum to sell gasoline and operate a snack shop. The snack shop is not a part of this appeal. While the number of pumps and nozzles on sight in 1989 is not disclosed by the record, the proposed changes would have the same number of fewer pumps with more nozzles attached. The total number of nozzles would be increased. Fewer or the same number of vehicles could be filled simultaneously with the new system.
The zoning board of appeals for Hartford acts pursuant to section 8-6 (3) of the Connecticut General Statutes when considering a request for a variance. The ZBA acts pursuant to CGS section 8-6 (2) when issuing special exceptions (permits). The ZBA acts as an agent of the state when approving the locations of gasoline stations pursuant to CGS section 14-321.
The defendants stipulated that the plaintiff, ALSA Associates, is the owner of land within a one hundred foot radius of the subject premises. The plaintiff operates a gasoline station and a snack shop on its land. The plaintiff CT Page 7736 is aggrieved pursuant to CGS section 8-8 (a). Notice, service and return of the appeal were properly made and are not challenged by the defendants.
In reviewing the actions of a local zoning board of appeals, this court must determine whether the board acted arbitrarily, illegally, or in abuse of its discretion. Spero v. Zoning Board of Appeals, 217 Conn. 435, 440 (1991); Horn v. Zoning Board of Appeals, 18 Conn. App. 674, 676 (1989). More specific standards of review will be discussed as each of plaintiff's three main claims are considered.
The plaintiff first claim attacks the accuracy and completeness of the defendant owner and lessee's submissions to the board. Essentially, the plaintiff contends that a member of the public would have insufficient notice of what the applicants sought. The special permit and variance were requested on the same form. This form contained cross-outs and was not under oath. Until the date of the hearing before the board, the form listed previous owner rather than the then current owners. Even after a correction was made at the hearing, the application only contained the name of one of the two owners and no address (stipulation #3). At the beginning of the ZBA hearing even the representative of Shuck Peteroleum was misinformed of the true owners [transcript p. 17, return item (j)]. Nor did the application disclose the names and addresses of the officers, directors and majority stockholders of the defendant lessee, William F. Shuck Petroleum Co. In addition section 35-13.11 of the 1977 municipal code [amended return (h)] requires that the application disclose the dimensions of the property. The plaintiff also complains that the zoning board of appeals did not include in the return the plans prepared by Rustic Designs-Consulting Engineers. However, the city's amended return to court includes them as (i).
This court finds that the prehearing notice was deficient and deprived the ZBA of jurisdiction. This finding is based not merely on the number of violations of the ZBA's own rules nor on their cumulative effect but on the complete confusion in who the applicants were and, most importantly, what the applicants sought. The engineering drawings were not stamped as received until the ZBA hearing date, March 21, 1990. The hand made sketch, described in item (e) of the return as a site plan, does not comply with any of the fourteen ZBA requirements detailed on the third page of its application [return item (a)] except #5 concerning parking stalls. This sketch was not filed until March 16, 1991. Even where there is partial compliance with the ZBA requirements, CT Page 7737 important information is not included. Structures are drawn but not both existing and proposed. The existing garage is shown but not the existing pumps. Neither the existing nor the proposed tanks are depicted. Fences and their height are shown but not the materials of which they are, or are to be, constructed. No proposed or existing sign is shown.
In its brief the ZBA claims that these fourteen requirements are not mandated by the municipal code. The short answer to this is that the entire code has not been made a part of this record. The city did provide this court with a copy of the 1987 code, but it is not a part of the record and is not the code employed by the ZBA or any of the other parties. The numbering system is different. This court will not take judicial notice of this code. Fernandes v. Zoning Board of Appeals, 24 Conn. App. 49, 55-56 (1991). The 1990 municipal code (plaintiff's trial exhibit #1). contains no sections relevant to the notice issue. Sections 35-13.11 and 35-13.11.1 of the code are provided as (h) of the amended return. They do require that applications for a special permit, special exception or a variance include the dimensions of the property, addresses of the applicants and all parties in interest, and names and addresses of the officers, directors, and majority owners of the type of corporation involved in this case (stipulation #1).
The fourteen requirements on the ZBA application form, whether mandated only in part or in total by the municipal code, are signposts to a member of the public interested in the subject premises. The face of the application itself does not provide sufficient guidance to an interested member of the public [return item (a)]. The application is a jumble of crossed out printed, typed and handwritten words. It is short on information concerning the applicant-lessee and inaccurate concerning the owner(s). The term "SPECIAL EXCEPTION" was printed by hand below the REQUEST VARIATION OF ZONING ORDINANCE line. The word "EXCEPTION" was then thoroughly crossed out. The word "Permit" appears above the next printed line which asks what the applicant's interest is in the property. Four requests are typed on the form.
 1. Gasoline Fueling Station in B-3 Zone 2. Increase in nozzles to 18 with three dispensers 3. Increase in tank size to 3-10,000 gallon underground tanks 4. Location of Primary Texaco I.D. sign outside of the building line.
Requests 2-4 have been crossed out. The only section CT Page 7738 of the municipal code filled in the space on the application for such information is section 35-7.20 [amended return (e)]. This section deals only with special permits for gasoline stations. It does not refer to variances. Above the crossouts in lower case hand printing is the phrase "permitted number of nozzle and building line requirements." This is squeezed below the printed upper case line "REQUEST VARIATION OF ZONING ORDINANCE." The word "VARIATION" has been crossed out. This contradictory, confusing jumble is too misleading to constitute adequate notice. Wright v. Zoning Board of Appeals, 174 Conn. 488, 489 (1978); Koepke v. Zoning Board of Appeals, 25 Conn. App. 611, 616-619
(1991); Hall v. Planning Board, 2 Conn. App. 49, 54 (1984).
The issue of the special permit can be briefly addressed. The notice was particularly insufficient for either of the assumptions discussed below. The three new and larger tanks are what necessitated a special permit. This typed request was crossed out and not even an attempt was made to include a handwritten request on the application. A look at the sketch submitted six days after the application would complete the confusion. No tanks are depicted. First, although the ZBA apparently did not credit the owner's evidence concerning his lack of abandonment, this evidence was strong. In addition to the owner's statement that he did not intend to stop selling gasoline there was his renewal of his annual license to sell gasoline. Also, the owner stated that he removed the old tanks to comply with state environmental requirements approximately six months before the application for the permit was made. If the special permit was needed only to intensify or expand the existing use, it still fails on the notice requirement. Second, if the ZBA was correct, a special permit was needed to reestablish an abandoned use. If that assumption is correct, then the ZBA was required to make certain findings pursuant to CGS sections 14-321 and 14-322 concerning the proximity of public gathering places and road conditions. No evidence was presented and no findings were made on these issues.
For two reasons the plaintiff prevails on third issue concerning the variance granted to increase the number of nozzles. As discussed above, the notice to an interested member of the public was insufficient. Secondly, there was insufficient finding of, or evidence of, hardship. The intriguing arguments in the defendant owners' brief on May 15, 1991, which distinguish between area and use tests for finding a hardship do not substitute for the total lack of a finding by the ZBA and the complete absence in the record of evidence of hardship. No amount of clever argument can create evidence or make findings which the ZBA should have CT Page 7739 heard or made. The issue was not the new types of gasoline but the new types of pumps and why more nozzles are required. The lack or unavailability of alternative dispensing systems should have been presented. Stillman v. Zoning Board of Appeals, 25 Conn. App. 631, 635-637 (1991). There should have been some evidence to establish that the choice of six-nozzle pumps was not merely a self-imposed problem. As stated in Egan v. Zoning Board of Appeals,20 Conn. App. 561, 563 (1990):
 A variance is authority extended to the owner to use his property in a manner precluded by the zoning regulations. Burlington v. Jencik, 168 Conn. 506, 508, 362 A.2d 1338 (1975). A zoning board has the power to grant a variance if the variance will not substantially affect the comprehensive zoning ordinance would cause unusual hardship unnecessary to achieving the plan's purpose. Pollard v. Zoning Board of Appeals, 186 Conn. 32, 38-39, 438 A.2d 1186
(1982); Aitken v. Zoning Board of Appeals, 18 Conn. App. 195, 204, 557 A.2d 1265 (1989). Proof of hardship is, therefore, a condition precedent to the granting of a variance, and such hardship must arise from the circumstances or conditions beyond the applicant's control. Smith v. Zoning Board of Appeals, 174 Conn. 323, 327, 387 A.2d 542 (1978); Aitken v. Zoning Board of Appeals, supra, 205.
The ZBA did not state that it found a hardship. The handwritten sentence by an assistant corporation counsel on the bottom of page three of the application [return (a)] is not a finding by the board. The March 22, 1990, letter [return (k)] does not refer to a hardship. In addition to no finding, no reasons for the nonexistent finding were stated. This court has searched the record to find some basic for the ZBA's action. Grillo v. Zoning Board of Appeals,206 Conn. 362, 369 (1988); Stankiewicz v. Zoning Board Appeals,15 Conn. App. 729, 732 (1988). No evidence establishing hardship has been found.
The decision of the zoning board of appeals is reversed.
EDWARD J. MULLARKEY JUDGE OF THE SUPERIOR COURT