[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Dean Macchio and his grandmother, Dolores Macchio, filed with this court an administrative or record appeal of a decision by the defendant Zoning Board of Appeals of the town of Darien (ZBA). During the pendency of this action, Dolores Macchio died, and therefore Dean Macchio will be referred to as the plaintiff. The ZBA denied the plaintiffs' request that a certain lane, driftway, or right of way, which is adjacent to the plaintiff's lot, be deemed a "street" for purposes of complying with the requirement that a building lot front on a street. At the same time, and as an alternative to the first application, the Macchios sought a variance of the requirement that a lot have 50 feet of street frontage. The property is in the R 1/5 zone (one-fifth of an acre) in Darien, which requires, among other things, that in order to build on a lot, one must have frontage of 50 feet on a street.
The following facts appear from the return of record filed by the defendant ZBA and a hearing held by this court. The plaintiff's lot, which has approximately 30,000 square feet, was created in April, 1946, when the Darien Town Plan and Zoning Commission approved a subdivision application, number #502, submitted by Guildway Homes Incorporated, and known as "Subdivision Plan of Weed Park." In addition to proposing 32 building lots, the subdivision map, #1454, described the subject premises, which was the only lot not having a lot number, and the only lot not fronting on a street, as "RESERVED." All the other lots in this subdivision fronted on either Patton Drive, West Avenue, or Hollow Tree Ridge Road. Also depicted on this subdivision map is an "Old Right of Way," which is adjacent to, and generally westerly of, the subject premises or "reserved" lot, and consists of a 20 foot wide way proceeding about 450 feet CT Page 4225-KKK in total length out to West Avenue near its intersection with Oak Park Avenue. The record also contains the minutes of the 1946 meeting in which the applicant for the subdivision stated that he thought the "reserved" parcel might be used as a "playground."
On June 23, 1952, Dolores Macchio and her husband, Victor P. Macchio, also deceased, purchased lot 16 on Patton Drive, and approximately five years later they purchased lot 42, the so-called "reserved" parcel, the subject premises, which is situated immediately to the rear or west of lot 16. The conveyance of Lot 42 did not include any right to use the adjacent lane or driftway for ingress and egress. In 1974, Mr. and Mrs. Macchio applied to the Planning and Zoning Commission for approval of a two lot subdivision, to include their home fronting on Patton Drive, and the subject parcel behind their home. The Commission rejected this application, #502, because the rear lot did not front on a street, and the driftway or right of way out to West Avenue did not fit the definition of a "street," as found in the zoning regulations.
Prior to her death in 1993, Dolores Macchio quitclaimed lot 42 to her grandson, the plaintiff, in May, 1992. Dean Macchio applied to the town's zoning enforcement officer for a zoning permit to construct a single family dwelling on the subject premises, which are shown on the Tax Assessor's Map #48 as lot #42. The map submitted by the plaintiff for that purpose indicated that lot 42 would access to Patton Drive over a proposed 15 foot wide driveway over his grandmother's property, also known as 19 Patton Drive. The zoning enforcement officer denied this request because, according to that official, the right of way or driftway did not constitute a "street" as that term is defined in section 210 of the Darien zoning regulations. A "street" by definition includes only: (1) a street "laid out" on a map filed before October 6, 1924; (2) a street that has been "accepted" as such; and (3) if the street has been "approved" by the Planning Zoning Commission. The zoning enforcement officer ruled that the driftway or right of way did not meet any of these descriptions because the parcel did not front on a street, and the 20 foot wide right of way adjacent to the subject premises did not satisfy the minimum street frontage requirement of 50 feet.
This ruling by the zoning enforcement office resulted in an application by the plaintiffs to the ZBA in 1990 regarding the interpretation of a "street," in which the plaintiffs also sought CT Page 4225-LLL a variance of the requirement of 50 feet of frontage on a street, as required by sections 332 and 406 of the zoning regulations, in the event the ZBA did not agree with their interpretation of the definition of a street.
The ZBA held a public hearing on March 21, 1990, and subsequently ruled, in a unanimous decision dated March 30, 1990, that the right of way was not a street, and the board also denied by a vote of two in favor and three opposed the application for a variance of the street frontage requirements.
The ZBA gave a number of reasons why it agreed with the zoning enforcement officer's prior ruling that the right of way or driftway could not be deemed a street, viz., (1) that the right of way does not afford the "principal means of access" to the subject parcel and is therefore not a "street" within the meaning of section 210 of the regulations; (2) that the right of way was never accepted as a street by the town; (3) that the right of way in question was not depicted as a street on Map #93 filed in 1915, nor did the lane or driftway extend to the subject premises on said map; (4) that the right of way on Map #93 was not used as a street, was not given a street name, and was not at that time a principal means of access to any parcel; (5) that when the 32 lot subdivision was created in 1946, at which time Map #1454 was filed, this map showed the subject parcel as "RESERVED" and was therefore of a different status than the 32 lots fronting on streets; (6) that Map #3672, filed in 1972 at the time Joseph Saverine's adjacent property was divided into two lots, does not indicate that the Planning and Zoning Commission approved the right of way or driftway as a street, nor does this map depict the portion of the lane near the subject premises as a street; and (7) that the Commission rejected the Macchio application in 1974 to use the rear lot because the lane or driftway did not meet the definition of a street, and had not been approved by the Commission as a street.
The ZBA also denied the plaintiffs' application for a variance of sections 332 and 406 of the Darien regulations. The ZBA's reasons for denying the variance were: (1) the subject parcel is not a lot because a lot, by definition, means a parcel having its principal frontage on a street, and the subject parcel does not have such frontage; (2) the applicants to the board had not established that they had a reasonable expectation that the premises could be built upon, particularly in light of the fact that in 1946, six years before the Macchios purchased the CT Page 4225-MMM property, the subject lot was shown as "reserved," and, moreover, the subject parcel is only assessed at $2,100; (3) the applicant did not show that 19 Patton Drive and the subject parcel could not be resubdivided to provide two building lots; (4) the proposed driveway from the subject premises over 19 Patton Drive would not be compatible with the surrounding parcels and would adversely affect neighboring properties; (5) the difficulty regarding access to a street faced by the applicant is not caused by the zoning regulations, but rather was caused by Guildway Homes, Inc., the developer, who created the "reserved" parcel and left it without street frontage; and (6) the applicant never clarified the status of the lane or driftway or its exact location.
The plaintiffs then appealed to this court, pursuant to General Statutes § 8-8, and alleged that the ZBA acted illegally, arbitrarily and in abuse of its discretion for the following reasons: (1) the lane or driftway was used to permit construction on the adjoining parcel and a building permit was issued for those lots; (2) the right of way was laid out as a street on Map No. 93 filed in 1915; (3) the Planning and Zoning Commission has previously recognized this lane or driftway; (4) the lot would be landlocked if a variance of zero feet instead of the required fifty feet frontage is not granted, thus depriving the plaintiff of all reasonable use of his property; and (5) an adjoining neighbor who opposed the application, Linda Santarella, chairs the Darien Representative Town Meeting's planning, zoning and housing committee, and hence "the political winds did not favor the Applicant."
At a hearing held for the purpose of establishing aggrievement, the plaintiff was found to be aggrieved pursuant to General Statutes § 8-8 (a)(2)(b), and hence to have standing to pursue this appeal, as he is the owner of the premises which were the subject of the application to the ZBA and the appeal to this court. Bossert Corporation v. City of Norwalk, 157 Conn. 279,285, 253 A.2d 39 (1968).
As to the ZBA's interpretation of the definition of a "street" as found in the local ordinance, the general standard of review applies, and thus the decision of the defendant may only be reversed if the court can determine that the defendant acted illegally, arbitrarily and in abuse of its discretion. The trial court is not at liberty to substitute its judgment for that of the administrative tribunal. Adolphson v. Zoning Board of Appeal,
CT Page 4225-NNN205 Conn. 703, 707, 535 A.2d 1297 (1988). See also Frito-Lay v.Planning and Zoning Commission, 206 Conn. 554, 572-73,538 A.2d 1017 (1988). The court may only determine whether the record reasonably supports the conclusion reached by the agency. Id., 572.
Although agreeing that the town of Darien never "accepted" the lane as a street, the plaintiff argues both that Map #93, filed in 1915, shows the lane or driftway laid out as a street, and that Map #3672, filed in 1972 at the time of a subdivision of property adjacent to the subject premises, indicates that the Planning and Zoning Commission approved the lane as a street. Thus, according to the plaintiff, the driftway qualifies as a street under two of the three definitions in the regulations. As to the first contention, a review of Map #93 indicates that it does not depict the lane or driftway as a street. Also, with respect to Map #3672, there is no indication that the Planning and Zoning Commission approved the "layout" of the lane or driftway as a "street." Therefore, it follows that the reasons given by the ZBA for its denial of street status to the lane or driftway in issue appear logical and sound and do not justify a contrary interpretation by this court.
As to the denial by the ZBA of the application for a variance, which sought to use an easement over 19 Patton Drive rather than ownership of land actually fronting on a street, earlier this year the Supreme Court in Reid v. Zoning Board ofAppeals, 235 Conn. 850, 856, 670 A.2d 1271 (1996), reviewed the law pertaining to variances, which it described as "well-settled." Section § 8-6 (a)(3) provides in relevant part that a zoning board of appeals may determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where,owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship. . . . Id., 856-57 (Emphasis in original; internal quotations omitted.) A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations. . . . The power of the board to grant a variance should be used only where a situation falls fully within the specified requirements. . . . An applicant for a variance must show that, because of some peculiar CT Page 4225-OOO characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone." Id., 857.
"Variances cannot be personal in nature, and may be based only upon property conditions. . . . In fact, we have stated that [p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance." (Internal quotations omitted.) Reid v. Zoning Board of Appeals, supra,235 Conn. 857.
As to the standard of review for this court in reviewing the denial of a variance, it has been held that: "[i]n reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal." (Internal quotation marks omitted.) Francini v. Zoning Board of Appeals, 228 Conn. 785,791, 639 A.2d 519 (1994). "When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . Courts must not substitute their judgment for that of the zoning board and must not disturb decisions of local boards as long as honest judgment has been reasonably and fairly exercised after a full hearing." (Citation omitted; internal quotation marks omitted.) Fernandes v. Zoning Board ofAppeals, 24 Conn. App. 49, 53, 585 A.2d 703 (1991). It is also axiomatic that a plaintiff has the burden of proving that a zoning board of appeals has acted illegally, arbitrarily or in abuse of its discretion. Id., 55. Moreover, if any one of the reasons advanced by an agency is sufficient to support its granting of a variance, then its decision must be upheld. SaksonNursery, Inc. v. Planning and Zoning Board of Appeals, 30 Conn. App. 627,629-30, 621 A.2d 768, cert. denied, 226 Conn. 908,625 A.2d 1379 (1993). The court's only role is to search the record to determine whether the ZBA's conclusion was reasonably supported by the record, but not attempt to weigh the evidence or determine issues of fact. Farrington v. Zoning Board of Appeals,177 Conn. 186, 190, 413 A.2d 817 (1979).
A variance would not have been justified in this case because any hardship the plaintiff now has in terms of his inability to use the subject premises arises out of his own purchase of the CT Page 4225-PPP lot knowing that it did not have the required street frontage, and also knowing that the parcel had been labelled "restricted" at the time of the 1946 subdivision. "Where the claimed hardship arises from the applicant's voluntary act . . . a zoning board lacks the power to grant a variance. . . . The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved. . . . [S]elf-inflicted or self-created hardship . . . is never considered proper grounds for a variance. . . . [W]here the applicant or his predecessor creates a nonconformity, the board lacks power to grant a variance." (Citations omitted; emphasis deleted; internal quotation marks omitted.) Pollard v. ZoningBoard of Appeals, 186 Conn. 32, 39-40, 438 A.2d 1186 (1982).
In addition to his contentions regarding the definition of a street and the propriety of granting a variance, the plaintiff has made several other claims. The first is that an earlier decision by this court in D'Acunto v. Darien, Superior Court, judicial district of Stamford/Norwalk, Docket No. CV 85 76189 (January 29, 1988, Lewis, J.), controls the disposition of this case. However, in D'Acunto the road in question was explicitly approved by the Darien Planning and Zoning Commission, and several recorded maps depicted the road as a street.
Another claim by the plaintiff is that a denial of the application to use the subject premises would result in the confiscation of the property because it is landlocked. However, the plaintiff voluntarily purchased his lot, knowing a subdivision application proposed by his grandparents had already been rejected by the Planning and Zoning Commission in 1974. Moreover, at the time the Macchios applied to the ZBA in 1990, the subject premises could have been used as a rear or so-called flag lot with access to Patton Drive, an option which they did not attempt to utilize.
The plaintiff also contends that the division of lots 42A and 42B by Richard Saverine on the adjacent property, as depicted on Map #3672, indicates clearly that the Planning and Zoning Commission accepted the driftway as a street in order to satisfy the requirement of frontage on a street. However, there is no indication on this map of any such approval by the Commission, and the defendant characterizes the subdivision as the one "free" cut that is permitted a property owner without the necessity of CT Page 4225-QQQ subdivision approval. It appears therefore that neither the Saverine "subdivision" or the right of way was approved by the Planning and Zoning Commission. The zoning enforcement officer did agree that he did not understand why Saverine was given a building permit in 1972. A possible reason is that Saverine purchased the right of way or driftway out to West Avenue in 1972, and the plaintiff was unable to indicate that he had acquired any such rights. Another possibility is that the zoning laws in Darien were not so vigorously enforced in those years as they are today.
A further basis for the appeal by the plaintiff is that Linda Saverine Santarella, who resides on one of the lots created by her brother Joseph Saverine's division of his property into two lots, and uses the lane or driftway for her access to West Avenue, opposed the application at the public hearing, and that Mrs. Santarella is also the chairwoman of the Darien Representative Town Meeting's Planning, Zoning and Health committee. Mrs. Santarella testified before this court and it develops that her RTM committee has nothing to do with either the nomination or approval of membership on the ZBA, and no evidence of any impropriety was introduced. General Statutes § 8-11 is not involved in the present case as Mrs. Santarella is not a member of a zoning commission or board of appeals, and therefore had the right to appear before the ZBA to oppose the plaintiffs' application.
Mrs. Santarella's name also surfaced in connection with another claim of the plaintiff involving one of the members of the ZBA, Georgia VonSchmidt. who, according to the plaintiff, acted improperly in that she contacted Mrs. Santarella prior to her voting against both aspects of the plaintiffs" application to the ZBA. Mrs. Santarella and Mrs. VonSchmidt, who has been a member of the ZBA since 1978, both testified before this court to the effect that Mrs. VonSchmidt spoke to Mrs. Santarella only in order to gain her permission to cross her land in order that Mrs. VonSchmidt could view the subject premises prior to the ZBA public hearing. Again, there was no evidence of impropriety.
It is also well recognized that a board member should not engage in activities which result in the creation of a situation tending to undermine public confidence. Thorne v. ZoningCommission, 178 Conn. 198, 205, 423 A.2d 861 (1979). Mrs. VonSchmidt's viewing of the premises and asking a person over whose property she needed to pass in order to view the premises CT Page 4225-RRR hardly constitutes a conflict of interest. In McGavin v. ZoningBoard of Appeals, 26 Conn. Sup, 251, 254, 217 A.2d 229 (1966), a conflict of interest was not present where a board member was friendly with a party who opposed the granting of the plaintiff's variance.
For the foregoing reasons, and based on the standard of review of decisions of a zoning board of appeals, this court is of the opinion that the decision of the ZBA in this case should not be overturned, and, accordingly, the appeal of the plaintiff is dismissed. Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 8th day of May, 1996.
William B. Lewis, Judge