[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by Frank Miller (hereinafter plaintiff) from the denial of his request for zoning variances by the Westport CT Page 2371 Zoning Board of Appeals (hereinafter ZBA). On October 28, 1991, plaintiff applied to the ZBA for variances of 31-1.2 and 12-3 of the Westport Zoning Regulations. Legal notice was given and, on November 26, 1991, a public hearing was held to discuss plaintiff's application #4530. The hearing on plaintiff's application was continued until December 10, 1991, and closed that same day. On December 11, 1991, the ZBA denied plaintiff's application. The legal notice of decision was filed on December 16, 1991, and published in the Westport News on December 18, 1991.
Plaintiff's lot (the Miller lot) and much of the surrounding property was owned by Harriet Salfati between the 1930's and the 1950's. ROR, 37 p. 3. The Miller lot and an adjacent lot were conveyed to the Union Trust Company in 1965. ROR, 37 p. 3-4; ROR 20 p. 3; Plaintiff's Brief, p. 5. Union Trust conveyed the lots to Buddy B. Incorporated in 1971. ROR, 37 p. 4; ROR 12; ROR, 20 p. 3. Buddy B. subsequently conveyed the lots to plaintiff, its principal. ROR, 37 p. 4; ROR, 12; ROR, 20, p. 3. Plaintiff sold the adjacent lot to one Johnson (the Johnson lot) in 1982; he retained the lot in question. ROR, 37 p. 4. Plaintiff attempted to sell the Miller lot in 1991. ROR, 37 p. 2. On April 23, 1991, an attorney for the potential buyer inquired as to whether the Planning and Zoning Commission would issue a certificate of zoning compliance for the Miller lot and whether such lot was a valid building lot. ROR, 20; ROR, 37 p. 2. The Planning and Zoning Director notified the attorney that the lot was nonconforming and, therefore, no certificate would be issued. ROR, 20; ROR, 37 p. 23, 39. Thereafter, plaintiff applied for variances of Westport zoning Regulations 31-1.2 and 12-3. ROR, 37 p. 3. The application was denied. ROR, 3.
The ZBA denied the application under its power "to determine and vary the application of the zoning bylaws, ordinances or regulations. . . ." General Statutes 8-6(3). "A local zoning board has the power to grant a variance under General Statutes 8-6(3) where two basic conditions are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Citations omitted.) Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 655,427 A.2d 1346 (1980).
The plaintiff has appealed the ZBA's ruling under General Statutes 8-8. "[A]ny person aggrieved by any decision of a board CT Page 2372 may take an appeal to the superior court for the judicial district in which the municipality is located." General Statutes 8-8(b). In the case at bar, plaintiff is the owner of the subject lot and, therefore, it is found that he satisfies the definition of an "aggrieved person". See General Statutes 8-8(a)(1); ROR, 12 p. 10. An appeal taken under 8-8 must be commenced by services of process within fifteen days from the date that notice of the board's decision was published. General Statutes 8-8(b). As noted earlier, notice was published in the Westport News on December 18, 1991. Process was served on the chairman of the ZBA and the town clerk on December 31, 1991. Therefore, the appeal is timely.
"The action of the board of appeals is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Citation omitted). Bora v. Zoning Board of Appeals,161 Conn. 297, 299, 288 A.2d 89 (1971). "The question before [the court] is whether the action of the board of appeals is reasonably supported by the evidence in the record." (Citations omitted.) Id., 299-300. Decisions of local boards should not be disturbed where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing." (Citations omitted.) Id., 300. "The trial court may not substitute its judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers." (Citations omitted.) Frito Lay, Inc. v. Planning and Zoning Comm'n, 206 Conn. 554, 572-573, A.2d 1039 (1988). "The burden is on the plaintiff to prove that the board has not acted fairly, with proper motives and for valid reasons." Bora, supra, 300.
To begin the inquiry into the validity of the ZBA's action, it must be noted that "the power [of a board] to grant a variance should be sparingly exercised." (Citation omitted.) Kaeser v. Zoning Board of Appeals, 218 Conn. 438, 445, 589 A.2d 1229 (1991). Westport Zoning Regulation 12-3 states:
 Each lot shall have a minimum of one (1) acre (43,560 square feet) and shall be of such shape that a square with one hundred fifty (150) feet on each side will fit on the lot.
The Miller lot, while satisfying the acre requirement, cannot accommodate a 150 foot by 150 foot square. ROR, 31. As the lot exists today, only one side of the required square can fit properly. ROR, 31. Plaintiff cites the dimensions of the largest CT Page 2373 possible square as 150 feet by 144.46 feet. Plaintiff's brief, 5; ROR, 31.
At the hearing, the possibility of "merger" was discussed. Merger may arise by operation of law. Marino v. Zoning Board of Appeals, 22 Conn. App. 606, 607 n. 1, 578 A.2d 165 (1990). A zoning regulation which requires merger, under certain circumstances, of a nonconforming lot with an adjacent lot owned by the same owner "is an understandable requirement because it furthers the general zoning purpose of eliminating nonconforming lots." Molic v. Zoning Board of Appeals, 18 Conn. App. 159, 164,556 A.2d 1049 (1989). Westport Zoning Regulation 6-3.2 states:
 If two or more adjoining lots of record, one or more of which are undeveloped and fail to meet the requirements of these regulations with regard to lot area and/or lot shape, were in the same ownership on March 24, 1956 or subsequent date, and if such lots taken together would form one or more lots, each more nearly meeting the requirements of these regulations with regard to lot area and lot shape, such lot or lots shall merge and shall no longer be considered legally existing as separate lots. . . .
It is the opinion of the court, that the previous inquiry into the chain of title makes it clear that the Miller lot and Johnson lot are subject to this "merger rule" if merging would more nearly meet the shape requirement. ROR, 37 p. 3-4. Plaintiff claims that the property is "misshaped" by only five and one-half feet. Plaintiff's brief, 10. He alleges that the lot is deceptive in that it looks like a valid building lot. Id., ROR, 37 p. 54. Plaintiff further claims that even if the two lots are merged, the property still could not accommodate a 150 foot by 150 foot square. ROR, 37 p. 4. Thus, he claims that 6-3.2 may not apply at all in this case. ROR, 37 p. 4-5, 16-18; Plaintiff's Brief, 7. Defendant alleges that the rule does apply here because merger would "more nearly" meet the shape requirements. ROR, 37 p. 17; Defendant's brief, 15-16. Defendant claims that with merger, the Miller lot will have two out of four sides, instead of only one out of four sides, that measure 150 feet. Defendant's brief, 15-16. The board decided not to grant the variance with respect to lot shape because plaintiff failed to prove a sufficient hardship. ROR, 5. CT Page 2374
As noted above, "a board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Citation omitted.) Bell v. Zoning Board of Appeals, 27 Conn. App. 41,45, 604 A.2d 379 (1992). It is the court's opinion that the decision of the ZBA does not rise to such a level. It was not unreasonable for the ZBA to find reasons such as the "deceiving" nature of the property and the fact that the property "looked" like a valid building lot as insufficient to support the burden of proving hardship. See, Belknap v. Zoning Board of Appeals,155 Conn. 380, 232 A.2d 922 (1967) (court upheld denial of variance although applicant had good faith belief that lot conformed to area requirements). It is also found that there is evidence in the record that the lots merged by operation of 6-3.2 in that the lot became more nearly conforming to the shape requirements and that plaintiff created his own difficulties when he conveyed the Johnson lot in 1982. ROR, 37 p. 4, 16-17, 53; ROR, 20 p. 8; Defendant's brief, Exhibit A. It is found that the decision to deny the variance with respect to 12-3 of the Westport Zoning Regulations should be affirmed. See, Kores v. Zoning Board of Appeals,2 Conn. L. Rptr. 586 (September 26, 1990, Dunn, J.) (plaintiff's conveyance of a lot in violation of merger rule was a self-created hardship).
Westport Zoning Regulation 31-1.2 states:
 Two (2), three (3), four (4) or five (5) lots may use the same private street providing that such street has a minimum right-of-way width of thirty (30) feet and connects with or extends from an existing improved public street, private street and/or subdivision road provided that such existing street has an improved travel path at least twenty (20) feet wide and a right-of-way width of forty (40) feet. . . .
The roadway which plaintiff seeks to have serve the Miller lot, known as Winding Lane West, is 21 feet wide. ROR, 31; 37 p. 2. This roadway already serves two lots. ROR, 31; Defendant's Brief, 8; ROR, 37 p. 10-12, 42-44. Thus, the Miller lot does not meet the requirements of 31-1.2. ROR, 37 p. 2. Plaintiff claims hardship in that although the Miller lot does not conform, the lot will be landlocked if no variance is forthcoming. Plaintiff's brief, 12. Defendant claims that the plaintiff failed to prove a sufficient hardship. ROR, 5. Defendant alleges that plaintiff desires to avoid the zoning requirements so as to create a building CT Page 2375 lot where none previously existed. Defendant's brief, 11.
To begin, there is a question as to whether Winding Lane West is a private street or merely a right of way. If it is only a right of way, then the Miller lot would be in violation of 31-1.1 due to the fact that it would lack "frontage of at least twenty (20) feet of fee ownership on an existing improved public street, private street and/or subdivision road. . . ." Plaintiff acknowledges the problem if Winding Lane West is classified as a right of way but claims that it is a private street. ROR, 37 p. 27, 28, 54. Defendant, on the other hand, claims the passage is a right of way and thus the Miller lot does not satisfy the frontage requirements of 31-1.1. Defendant's brief, 8-9; see also ROR, 31; 37 p. 10, 45.
Putting the frontage requirements aside, and assuming arguendo that Winding Lane West is a private street, the plaintiff must demonstrate that the ZBA has abused its discretion in denying a variance for his nonconforming lot. "It is well settled that the granting of a variance must be reserved for unusual or exceptional circumstances. Proof of hardship is a condition precedent to granting a variance." (Citation omitted.) Kelly v. Zoning Board of Appeals, 21 Conn. App. 594, 598, 575 A.2d 249 (1990). "[T]he rule is well established that the financial loss or the potential of financial advantage to the applicant is not the proper basis for a variance." (Citation omitted.) Garibaldi v. Zoning Board of Appeals, 163 Conn. 235, 239, 303 A.2d 743 (1972). "Similarly, it is also well established that self-inflicted hardship which arises because of individual actions by the applicant will not provide a zoning board of appeals with sufficient reason to grant a variance." (Citation omitted.) Id. "The hardship must arise from circumstances or conditions beyond the control of the property owner." (Citation omitted.) Kelly, supra, 598. "Where the claimed hardship arises from the applicant's voluntary act . . ., a zoning board lacks the power to grant a variance." (Citation omitted.) Kaeser v. Zoning Board of Appeals, supra, 445.
It is found that the record supports defendant's decision to deny the variance. There was evidence that plaintiff himself could have obviated his hardship by selling the Miller lot with the Johnson lot as the merger rule (discussed supra) would require. In addition, the plaintiff could have reserved use of part of the Johnson lot for access before selling it in 1982. ROR, 37 p. 49-53. Even plaintiff's attorney stated that plaintiff created his own problems when he sold the Johnson lot. ROR, 37 p. 4. Plaintiff CT Page 2376 sought to correct those problems so as to sell the nonconforming Miller lot. ROR, 37 p. 2-3. It is found that financial and self-created hardships are insufficient reasons to grant a variance.
"The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved." (Citations omitted.) Pollard v. Zoning Board of Appeals, 186 Conn. 32, 39-40, 438 A.2d 1186 (1982); Stange v. Zoning Board of Appeals, 3 CSCR 535 (May 18, 1988, Nash, J.) The record here indicates that the regulations have not caused the hardship but that plaintiff's own actions have resulted in his predicament. It is found that if plaintiff did not sell the Johnson lot, violating the merger rule, he would have no problem with access. In addition, assuming merger did not bar plaintiff from selling the Johnson lot, it is found that the fact is that plaintiff sold it without insuring the Miller lot was adequately accessible. The inadequate access to the Miller lot cannot be seen as being the direct result of the regulations. "It is not the function or responsibility of the board of appeals to seek ways to extricate [the applicant] from his self-created difficulties." (Citation omitted.) Pollard, supra, 44. It is found that plaintiff has failed to carry his burden of proving a sufficient hardship. It is found that the decision to deny the variance with respect to 31-1.2 of the Westport Zoning Regulations should also be affirmed.
Plaintiff also claims that the denial of the variances by the ZBA constitutes an unconstitutional taking of his property without due process. Plaintiff's brief, 14. He alleges that the ZBA's decision renders the Miller lot landlocked and virtually useless. Id., 16.
"A landowner has the burden of establishing that a land use regulation amounts to a taking of his particular property." (Citation omitted.) Bombero v. Planning Zoning Comm'n.,218 Conn. 737, 746, 591 A.2d 390 (1991). "[C]onfiscation only occurs in those rare instances when the municipality's regulation prevents the owner from making any beneficial use of the land." Todro, Connecticut Land Use Regulation p. 17 (2d Ed. 1992); Stankiewicz vc. Zoning Board of Appeals, 15 Conn. App. 729, 546 A.2d 919 (1988), aff'd, 211 Conn. 76 (1989). "Short of regulation which finally restricts the use of property for any reasonable purpose resulting in a `practical confiscation,' the determination of whether a CT Page 2377 taking has occurred must be made on the facts of each case with consideration being given not only to the degree of diminution in the value of the land but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner." Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146,151, 365 A.2d 387 (1976).
It is found that plaintiff's claim that the denial of his application has resulted in a taking is without merit. The alleged "uselessness" of the Miller lot is not the direct result of the zoning regulations but instead is the result of plaintiff's own action. Thus, a claim of confiscation or taking is inappropriate. See, Id.; Eigenbrod v. Zoning Board of Appeals, CV90 0045269S (June 20, 1991, Jackaway, J.) (court found self-created hardship and declined thereafter to discuss the issue of whether the board's action constituted a taking).
Moreover, even assuming arguendo that the regulations directly caused the hardship, the "plaintiff is not entitled to judicial review of the merits of his regulatory takings claims until he has met the requirements of establishing the finality of the agency determination." (Citations omitted.) Gill v. Inland Wetlands 
Watercourses Agency, 219 Conn. 404, 415, 593 A.2d 1368 (1991). "To determine the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property." Id. It is found that plaintiff has failed to meet this burden. It is evident from the record that a question remains regarding the correct characterization of "Winding Lane West".
If it is considered a right of way, as the ZBA claims it is, plaintiff is in a position to request a variance as to the frontage requirement of 31-1.1 of the Regulations and if such a variance is granted, it is not clear whether the ZBA would still hold the right of way (Winding Lane West) to the minimum width requirements for private streets found in 31-1.2 of the Regulations. Therefore, the plaintiff can not demonstrate the requisite finality of his property "landlocked" status.
The appeal is dismissed.
RYAN, J. CT Page 2378