ROBERT L. BELKNAP ET AL. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF EASTON

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued June 13—decided July 13, 1967

*Raymond W. Beckwith,* for the appellant (defendant).

*John J. Hunt,* for the appellees (plaintiffs).

THIM, J. The plaintiffs are the owners of a lot having an area of 2.94 acres in the town of Easton. Easton is divided into two zoning districts. Easton Zoning Regs. § 8 (1960). The plaintiffs' lot is in district B. A regulation applicable to this district provides that no buildings shall be erected on any lot having a total area of less than three acres. Ibid. This regulation has been in effect since 1941. Id. § 10.

The plaintiffs desired to erect a building on their lot and applied to the defendant board for a variance of the aforementioned area-requirement regulation. After a hearing, the board denied their application. The plaintiffs then appealed to the Court of Common Pleas, claiming that the board's action in denying the variance was illegal, arbitrary and an abuse of the discretion vested in it. The Court of Common Pleas sustained the plaintiffs' appeal. The present appeal by the board followed.

The record discloses these facts: The lot which the plaintiffs own was initially a part of a tract of thirty-four acres owned by Mrs. Frances Seymour. She conveyed away various portions of this tract until only the lot in question remained. On March 5, 1953, a real estate broker, acting on behalf of Mrs. Seymour, applied to the board for permission to sell the lot in question as a building lot. The board refused to grant a variance of the minimum area requirement. In 1954, Steve Dusick became interested in purchasing the lot in question. He retained an attorney to look into the matter for him. Dusick's attorney communicated with Mrs. Seymour. She represented to him that she had title to a strip of land, 37 by 182 feet, which abuts the lot in question, and she stated she would be willing to sell this strip of land along with the lot. If the

lot in question and the abutting strip of land were considered as one lot, it would have an area of over three acres. Dusick's attorney then inquired of the board concerning the proposed transaction. He was informed by the board that the area of the strip of land could be combined with the area of the lot in question to meet the minimum area requirement, but that Dusick would have to show that he had title to three acres or more of land before he could build a house on the lot. Dusick's attorney then undertook to search the title to the lot and the abutting strip of land. There were apparently no adequate maps or surveys of the property available, and the title search was inconclusive as to whether Mrs. Seymour still retained ownership of the abutting strip of land. Therefore Dusick's attorney relied on the representations of Mrs. Seymour that she did indeed have title to the strip of property, and he certified the title to both the lot and the strip of land. Dusick then purchased the property from Mrs. Seymour by a warranty deed, which contained a description of both the lot and the abutting strip of land. In fact, Mrs. Seymour had earlier conveyed the title to the abutting strip of land to another person. It is conceded that Dusick never acquired title to the abutting strip of land.[1]

Apparently, Dusick never attempted to build on the lot in question, and in 1955 he sold the property to the plaintiffs. The warranty deed from Dusick to the plaintiffs contained the same description as that contained in the earlier deed from Mrs. Seymour to Dusick. The plaintiffs concede they acquired title only to the 2.94-acre lot in question. At the time, however, they believed they owned a

[1] No claim is made that § 47-10 of the General Statutes is in any way applicable to the present situation.

lot of over three acres in area, and for some ten years they paid property taxes on both the lot and the abutting strip of land.

In 1965, the plaintiffs decided that they wished to build a house on their property. Before building, however, they caused the land to be surveyed and a title search to be made. These disclosed that the plaintiffs owned only the 2.94-acre lot in question. The plaintiffs claimed they have been unable to purchase any additional land to meet the minimum area requirement and that they have been unable to sell their property for a reasonable price.

On the facts as stated above, the board denied the plaintiffs' application for a variance. It stated, in substance, that the fact that the plaintiffs' predecessor in title had created, without good reason, the undersized lot in question after the adoption of the three-acre minimum area regulation was insufficient reason for the granting of a variance.

The sole issue presented by this appeal is whether the board's refusal to grant the variance for the reason stated was proper when the hardship which is complained of did not originate in the application of the zoning regulations themselves, and yet it was not caused by any act of the applicants themselves.

One who seeks a variance must show that, because of some unusual characteristic of his property, a literal enforcement of the zoning regulations would result in unusual hardship to him. General Statutes § 8-6; *Ward* v. *Zoning Board of Appeals*, 153 Conn. 141, 143, 215 A.2d 104. "The hardship complained of must arise directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved." *McMahon* v. *Board of Zoning Appeals*, 140 Conn. 433, 442, 101 A.2d 284; see also *Highland Park, Inc.* v. *Zoning Board*

*of Appeals,* 155 Conn. 40, 43, 229 A.2d 356; *Booe* v. *Zoning Board of Appeals,* 151 Conn. 681, 683, 202 A.2d 245; *Misuk* v. *Zoning Board of Appeals,* 138 Conn. 477, 481, 86 A.2d 180. Admittedly, the plaintiffs did not contrive the division of the thirty-four-acre tract which led to the creation of the undersized lot in question. The acts of Mrs. Seymour alone created the condition which gave rise to the hardship complained of. Both the division of the tract and the eventual conveyance of the lot in question to the plaintiffs, however, occurred years after the enactment of the applicable zoning regulations, and the board could properly give consideration to these facts. See *Greenwich Gas Co.* v. *Tuthill,* 113 Conn. 684, 694, 155 A. 850.

"Subject to certain underlying principles, the solution of zoning questions is to be left to the local authority, and the courts cannot substitute their judgment for the liberal discretion enjoyed by zoning authorities. *Zieky* v. *Town Plan & Zoning Commission,* 151 Conn. 265, 267, 196 A.2d 758." *Rogers* v. *Zoning Board of Appeals,* 154 Conn. 484, 488, 227 A.2d 91. Where the condition which results in the hardship is due to one's own voluntary act, the zoning board is without the power to grant a variance. *M. & R. Enterprises, Inc.* v. *Zoning Board of Appeals,* 155 Conn. 280, 282, 231 A.2d 272. Where, as in the present case, however, the hardship arises as the result of a voluntary act by one other than the one whom the variance will benefit, the board may, in the sound exercise of its liberal discretion, grant the variance. Cf. *Highland Park, Inc.* v. *Zoning Board of Appeals,* supra. But, the board is not required to extricate an applicant from an unusual hardship, at least if it does not

arise out of the application of the zoning regulations themselves. In the present case, the action of the board in denying the variance cannot be characterized as illegal, arbitrary or in abuse of the discretion vested in it.

There is error, the judgment is set aside and the case remanded with direction to dismiss the appeal.

In this opinion the other judges concurred.