LAWRENCE AND MEMORIAL HOSPITAL, INC. *v.* ZONING
BOARD OF APPEALS OF THE CITY OF
NEW LONDON ET AL.
(7949)

SPALLONE, DALY and NORCOTT, Js.

Argued January 2—decision released July 10, 1990

*Myron B. Bell,* for the appellant-appellee (named defendant).

*Timothy D. Bates,* for the appellants-appellees (defendant Frances Graham et al.).

*John W. Barnett,* with whom was *Elizabeth P. Gilson,* for the appellee-appellant (plaintiff).

DALY, J. The defendants[1] appeal from the judgment of the trial court sustaining the plaintiff's appeal from a decision of the named defendant, the zoning board of appeals of the city of New London (board). The trial court's judgment reversed only that part of the board's decision sustaining the zoning enforcement officer's denial of the plaintiff's application for site plan approval to use a portion of its property for a parking facility on the basis of the plaintiff's failure to meet the 150 foot frontage requirement for uses within that zoning district. The board claims that the trial court should not have concluded that, by application of § 720B of

---

[1] In addition to the named defendant, the other original defendants in the case were Mary A. Hodge, Barry V. Connell, Frances Graham and Margarite Ann Glidden. Among these individual defendants, the trial court found that only Hodge, Connell and Glidden were aggrieved. The issue of aggrievement has not been appealed.

the zoning regulations of the city of New London, the plaintiff could aggregate noncontiguous frontage from property it owned that is located on two different public streets and in two other zoning districts.

The plaintiff has filed a cross appeal claiming that the trial court should not have sustained that part of the board's decision that denied the plaintiff's request for a variance because the hardship of lack of frontage was self-imposed, and that found that the planning and zoning commission's action to amend its regulations and rezone a portion of property that had less than the required minimum frontage for that new zone did not create a nonconforming lot that entitled the plaintiff to use the lot for any permitted use. We reverse on the appeal and reverse in part on the cross appeal with respect to the denial of a variance.

The property in question consists of a parcel of land that is "split zoned" into three zoning districts. There are approximately 3.3 acres in the institutional zoning district, and of these 3.3 acres there are only twenty-six feet of frontage on Ocean Avenue. The minimum frontage in this institutional zoning district is 150 feet. A ten acre portion of land is located directly behind and to the south of these 3.3 acres. This ten acre portion is in the R-3 multifamily zoning district, and of these ten acres, there are 81.19 feet of frontage on Evergreen Avenue. The minimum frontage in this R-3 zoning district is fifty feet. These thirteen plus acres are known as assessor's lot number two.

Last, there is a 140 foot deep and 50.12 foot wide portion of land located in the neighborhood business (NB) zoning district. This portion has 50.12 feet of noncontiguous frontage on Ocean Avenue, but this portion is contiguous in the rear with the institutionally zoned portion of the property. The minimum frontage in this NB zoning district is fifty feet. This portion of the parcel

owned by the plaintiff is known as assessor's lot number five. Of these three zoning districts, the only zoning district that permits the use of parking facilities is the institutional zone. The other two zones permit parking only as an accessory use for permitted uses in that district.

The plaintiff acquired the property in December, 1986, from Anthony and Francis Cash. Earlier that year, the plaintiff, acting for the Cashes, sought and obtained approval from the New London planning and zoning commission for an amendment to the zoning regulations to change 4.73 acres of land from R-3 to institutional. Of that 4.73 acres, there was only 141 feet of frontage on Ocean Avenue, twenty-six feet belonging to the 3.3 acres of Cash property, and the remaining frontage belonging to property owned by Amtrak. At the time of the zone change, and at all times thereafter, the minimum frontage for institutionally zoned property was 150 feet. After obtaining the zone change, but before acquiring legal title to the thirteen plus acres of Cash property, the plaintiff applied to the planning commission for a site plan approval to use the institutionally zoned portion of its land for a parking facility. Included in the site plan was a proposal to use the NB portion of the land as a means of access to and from the parking facility. In its application, the plaintiff asserted that it satisfied the 150 foot minimum frontage requirement for uses in the institutional district by aggregating the twenty-six feet of frontage on Ocean Avenue that was part of the institutional district with 50.12 feet of noncontiguous frontage on Ocean Avenue that was in the NB district and 81.19 feet of frontage on Evergreen Avenue that was in the R-3 district.

Before a hearing on the proposed site plan was held, the zoning enforcement officer denied the application on the basis that the plaintiff failed to satisfy the mini-

mum 150 foot frontage requirement of the "Institutional" district. Instead, the zoning enforcement officer told the plaintiff that it would have to obtain a variance from the board before the planning commission could consider approving its site plan. The plaintiff twice appealed unsuccessfully to the board. The plaintiff then obtained legal title to the Cash property previously described,[2] and, on January 12, 1987, sought a third ruling from the board. This third ruling is the subject of this appeal.

A public hearing was held on January 29, 1987, where the plaintiff claimed that the zoning enforcement officer had erred by not aggregating the frontages to meet the 150 foot minimum frontage requirement. Alternatively, the plaintiff requested that the board grant a variance or find that "the lot having twenty-six feet of frontage in the 'Institutional' zone constitutes a nonconforming lot, as defined in the regulations, by virtue of the action of the Planning & Zoning Commission's changing the zone to 'Institution' and may be developed as a non comforming lot." The board rejected all three claims. Specifically, on the plaintiff's application for a variance, the board denied the application, finding that the hardship was self-imposed. The plaintiff appealed to the Superior Court.

The court held that the board was incorrect only in determining that the plaintiff could not aggregate the frontages in order to meet the 150 foot frontage requirement. In its holding, the court concluded that the thirteen acres known as assessor's lot number two was a "through lot" separate from assessor's lot number five. The court then applied § 720B of the zoning regulations to determine that these two lots became an undivided lot and that under this section, the plain-

---

[2] We note that the entire Cash property actually consisted of approximately eighteen acres of land before the thirteen plus acres were sold to the plaintiff.

tiff met the required 150 feet of frontage. That section states, "If two or more contiguous lots or combinations of lots or portions of lots in single ownership are of record at the effective date of these regulations, or any amendment thereto, and if all or part of such lots do not meet the requirements for lot frontage, width, or area as established by these regulations, or any amendment thereto, the land involved shall be considered to be an undivided lot for the purposes of these regulations, except as provided in Article VII, Section 720.C herein. *No portion of said undivided lot shall be used or sold as a building lot which does not meet lot frontage, width and area requirements established within these regulations.*" (Emphasis added.) The court also ruled that these two lots, now considered to be undivided lot 2-5, would be subject to the emphasized language set forth above. We granted certification on the appeal and cross appeal.

# I

## THE APPEAL

The named defendant claims that the trial court should not have (1) held that the 150 foot frontage requirement for development in the institutional zone could be met by aggregating the frontage from the other two zones, (2) held that the property could be used for institutional purposes, (3) found that the property is composed of two lots, and (4) required the merger of two lots under § 720 of the zoning regulations.

We need not decide whether this jurisdiction permits aggregation, nor whether the court should not have applied § 720. Instead, we need look only to the definition of "frontage" given by the New London zoning regulations to find the court's ruling improper. Section 210 of the zoning regulations defines the term "frontage" as the "linear distance of a lot along a street line." The adjective "linear" is not further defined, but the

common meaning is "of relating to or a line following a straight course . . . . going in a straight direction . . . ." Webster, Third New International Dictionary. In addition, when defining the word "frontage," the zoning regulations specifically state that it is measured by the linear distance along *a street line,* not along one or more street lines. Thus, applying the definition of frontage in § 210 to § 570.6 of the zoning regulations which requires 150 feet of minimum frontage in institutionally zoned property, that frontage must be along one street only.

Accordingly, it was, at least, improper to include the frontage located on Evergreen Avenue because this frontage was located on a second, separate street line. Because it is not possible to include the frontage on Evergreen Avenue when calculating the frontage of the property at issue, the court improperly held that the plaintiff had established the minimum 150 foot frontage requirement for using institutionally zoned property. The plaintiff's property did not have adequate frontage on Ocean Avenue.

## II

### THE CROSS APPEAL

### A

The plaintiff's first claim on the cross appeal is that the trial court should not have upheld the board's finding that the hardship of lack of minimum frontage was created by the plaintiff's own action. We agree.

Section 1000C of the New London zoning regulations authorizes the board to vary the application of the zoning bylaws or regulations regarding minimum frontage requirements, but specifically prohibits a building or use of land to be "permitted, converted, enlarged or reconstructed for any purpose other than a use which is permitted in the district in which it is located." New

London zoning regulations § 1000.[3] Section 1020C of the zoning regulations provides "[n]o variance shall be granted on any allegation of hardship resulting from an act of the applicant subsequent to the adoption of this regulation, whether in violation of the provisions hereof or not. Before granting a variance on the basis of unusual difficulty or unreasonable hardship, there must be a finding by the Board of Appeals that all of the following conditions exist:

"(1) That if the owner complied with the provisions of these regulations, he would not be able to make any reasonable use of his property.

"(2) That the difficulties of hardship are peculiar to the property in question, in contrast with those of other properties in the same district.

"(3) That the hardship was not the result of the applicant's own action.

"(4) That the hardship is not merely financial or pecuniary."

The board specifically found that the third requirement was not met. We turn now to the case law on self-imposed hardships.

" 'Where the hardship involved "arises as the result of a voluntary act by one other than the one whom the variance will benefit, the board may, in the sound exer-

---

[3] This part of the cross appeal is limited only to the issue of whether the plaintiff is entitled to a new hearing because of the board's error in finding that the hardship was self-imposed. The issue of whether the present site plan application will be approved by the planning and zoning commission would be determined at a later time if the plaintiff is granted a variance.

We note, however, that the present request for a variance includes a variance to permit access over the strip of "NB" zoned land. We conclude that on the basis of the language of § 1000 quoted in the text of the opinion, the board is without power to grant that part of the plaintiff's request for a variance of the "NB" zoning district because parking facilities are not a permitted use in that district.

cise of its liberal descretion, grant the variance." *Belknap* v. *Zoning Board of Appeals,* 155 Conn. 380, 384, 232 A.2d 922 (1967). Where the claimed hardship arises from the applicant's voluntary act, however, a zoning board lacks the power to grant a variance. . . . The hardship which justifies a board of zoning appeals in granting a variance must be one that originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved. . . ." (Citations omitted.) *Pollard* v. *Zoning Board of Appeals,* 186 Conn. 32, 39–40, 38 A.2d 1186 (1982); see also *Aitken* v. *Zoning Board of Appeals,* 18 Conn. App. 195, 205–206, 557 A.2d 1265 (1989).

The narrow issue here is whether the plaintiff's request for the zone change that rendered its 3.3 acres unusable for any permitted use in the new zoning district is considered a voluntary act sufficient to constitute a self-imposed hardship. We conclude that it does not.

The defendants rely on several cases, including *Pollard* v. *Zoning Board of Appeals,* supra, for the proposition that errors in dimensions of parcels within larger lots do not necessarily give rise to a legal hardship. We think these cases are distinguishable.

In *Pollard,* the hardship of lack of frontage and side-yard setback requirements to the plaintiff's subdivided lot was caused by a surveying error; it did not arise from the application of the zoning regulations themselves. Id., 41; see also *Belknap* v. *Zoning Board of Appeals,* supra, 383 (court upheld denial of applicant's variance where predecessor in title, without good reason, created an undersized lot); *Aitken* v. *Zoning Board of Appeals,* supra (court reversed granting of applicant's request for variance of frontage requirements where request to subdivide was self-created).

In the present case, the hardship was created by application of the zoning regulation's frontage requirement to institutionally zoned property that failed to meet this requirement because of the planning and zoning commission's enactment of the zone change amendment to the property in question. The planning and zoning commission was not hired by nor under the control of the plaintiff, nor was it the plaintiff's agent.

We think that the cases of *Chevron Oil Co.* v. *Zoning Board of Appeals*, 170 Conn. 146, 365 A.2d 387 (1976), and *Johnny Cake, Inc.* v. *Zoning Board of Appeals*, 180 Conn. 296, 429 A.2d 883 (1980), are more on point.

In *Chevron Oil Co.* v. *Zoning Board of Appeals*, supra, 150, the court held that a hardship did not result from the applicant's successful request for a zone change but was caused by the application of a setback regulation to unusually shaped property. Likewise, in the present case, the hardship did not result from the plaintiff's successful request for a zone change but was caused by application of the frontage regulation; § 570.6; to the 3.3 acres of the plaintiff's property.

In *Johnny Cake, Inc.* v. *Zoning Board of Apeals*, supra, 300–301, the court indicated that "if the hardship is created by the enactment of a zoning ordinance and the owner of the parcel could have sought a variance, then the purchaser has the same right to seek a variance and, if [its] request is supported in law, to obtain the variance. . . . Otherwise the zoning ordinance could be unjust and confiscatory." (Citation omitted.)

In the present case, the hardship was created by the enactment of a zoning ordinance, namely, the zone change amendment by the planning and zoning commission. Contrary to the defendants' claim, the plaintiff, as purchaser had the same right to obtain a

variance to use these 3.3 acres of land as the legal owner of the property at the time of the zone change. See id. We do not agree with the defendants' assertion that the inability to use 3.3 acres of land does not amount to being confiscatory because the plaintiff was still able to use about "15 of the 18 acres" [sic] or "about 85 percent" [sic] of its property.[4] As in *Johnny Cake, Inc.*, the plaintiff has a right to obtain a variance to use these 3.3 acres for permitted uses in the institutional zoning district if its request is otherwise supported in law, because the automatic denial renders the zone change amendment unjust and confiscatory.

Accordingly, we find that it was incorrect to conclude that the hardship was created by the action of the plaintiff.

## B

The plaintiff's second claim is that the planning and zoning commission's zone change amendment created a nonconforming lot that entitled the plaintiff to use the lot for any permitted use. Specifically, it argues that it is entitled to use the 3.3 acres for the permitted use of a parking facility because of the definition of nonconforming lot in § 210 of the zoning regulations. We disagree.

In § 210, a nonconforming lot is defined as "A *lot legally existing* on the effective date of this regulation or any applicable amendment thereto but which fails by reason of such adoption, revision or amendment to conform to the present district regulation for any prescribed lot requirement (i.e. area, frontage, width or depth)." (Emphasis added.)

---

[4] The defendants incorrectly stated these figures in their reply brief. The plaintiff did not purchase the entire eighteen acres of land owned by the Cashes. See footnote 2, supra.

The plaintiff focuses only on the word "amendment" but ignores the initial requirement that there be a legally existing lot. There is nothing in the record to establish what constitutes the plaintiff's legally existing lot.

The plaintiff argues, for the first time on appeal, that the "lot" consisted of either assessor lot 2 or, as referred to and found by the trial court, undivided lot 2-5. Even if all that were true and a legal lot did exist, there is nothing in § 210 that provides that the plaintiff would be entitled as of right to use the 3.3 acres for any permitted use in that zoning district.

Rather, the plaintiff would have to establish that § 720D of the zoning regulations would apply. That section states: "If any nonconforming lot contains an existing conforming use within an existing structure, permitted accessory uses may be erected and any existing conforming structure may be modified, altered, or expanded so long as all new construction complies with all other applicable requirements of these regulations." The plaintiff never proceeded under this section of the zoning regulations and there is thus no error in this part of the cross appeal.

Reversed on the appeal. Reversed in part on the cross appeal. The case is remanded to the board for a new hearing limited to the issue of whether the plaintiff is entitled to a variance of the frontage requirements for the institutionally zoned portion of his property; see footnote 3, supra; in a manner not inconsistent with this opinion.

In this opinion the other judges concurred.