[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Joekie and Walter Gurski, abutting landowners, appeal pursuant to General Statutes § 8-8 from a decision of the defendant, Brookfield Zoning Board of Appeals (Board), granting a variance, pursuant to General Statutes § 8-6
(a)(3), to the defendant, Jana O'Connor.
The defendant, O'Connor, owns property at 11 Hopbrook Road in Brookfield, which she purchased in 1972. (Return of Record (ROR), Item A: Application for Variance (Application).) O'Connor further alleges that, at the time of the purchase, she relied on a survey of the property that had been completed in 1939, which survey indicated that the property consisted of 5.37 acres. (ROR, Item O: Transcript of May 6, 1996 public hearing before the Board (Transcript), pp. 2-3.) The evidence shows that O'Connor purchased the property with the intent to subdivide it at some later date. (ROR, Item O: Transcript, p. 3.) In 1972, the area was classified as an R-80 district, in which the minimum required lot size was 80,000 square feet. (ROR, Item J: Letter to Board from Ann Klebacha, Land Use Administrator.) In 1977, the zoning commission rezoned the area as an R-100 district, requiring a minimum lot size of 100,000 square feet, (ROR, Item J; ROR, Item T: Brookfield Zoning Regulations, § 242-402B, p. 69), based on a townwide study of soil and slope conditions. (ROR, Item J.)
In 1994, in preparation for the possible subdivision of the land, O'Connor hired a surveyor to complete a new survey map of the property. (ROR, Item A(2): Survey Map; ROR, Item O: Transcript, pp. 4-5.) This survey indicated that the land was only 4.38 acres, or approximately 190,626 square feet, almost 10,000 square feet short of the requirement to subdivide the CT Page 5111 property into two lots of conforming size. (ROR, Item A: Application; ROR, Item A(2): Survey Map; ROR, Item O: Transcript, pp. 4-5, 25.)
By application dated March 12, 1996, O'Connor submitted a request for a variance from the Brookfield zoning regulations to the Brookfield Zoning Board of Appeals. (ROR, Item A: Application.) O'Connor sought a variance from the regulations with respect to the minimum area requirement for the front part of her property, to enable her to subdivide the property into two lots, with the back lot having 100,200 square feet, and the front lot having 90,426 square feet. (ROR, Item A(1): Proposed Subdivision Map; ROR, Item O: Transcript, p. 5.) O'Connor also had a plan drawn up for the two lots, indicating that a new house and septic system would be built on the proposed back lot. (ROR, Item A(1): Proposed Subdivision Map. ) O'Connor's stated reason for the variance was that she "[p]urchased property in 1972 with documentation of size being 5.37 acres. A recent survey showed older maps incorrect. Property can support 2 lots, but with one 10,000 ft. short." (ROR, Item A: Application.)
On May 6, 1996, the Board conducted a public hearing on O'Connor's application. (ROR, Item O: Transcript.) The plaintiffs indicated their opposition to the requested variance arguing that, if allowed, the proposed subdivision would lower property values in the neighborhood. (ROR, Item O: Transcript, p. 28.) Following the discussion of the application, the Board engaged in a deliberation that resulted in four members voting in favor of the application and one member voting against it.[1] (ROR, Item O: Transcript, pp. 62-77.) The variance was granted. (ROR, Item O: Transcript, pp. 74-75.) Notice of the decision was given to O'Connor by a letter dated May 10, 1996. (ROR, Item Q.)
The plaintiffs appeal from the granting of the variance to O'Connor, on the grounds that "[i]n approving the application, the ZBA acted illegally, arbitrarily, and in abuse of the discretion vested in it in that: (a) there was no hardship; (b) any hardship was self-created; and (c) one ZBA member may have had a personal or financial interest in the outcome of the matter." (Complaint, ¶ 4.)
General Statutes § 8-8 governs appeals taken from the decisions of a zoning board of appeals to the Superior Court. To take advantage of a statutory right of appeal, parties must comply strictly with the statutory provisions that create such a CT Page 5112 right. Office of Consumer Counsel v. Dept. of Public UtilityControl, 234 Conn. 624, 640-41, 538 A.2d 1251 (1995). These provisions are mandatory and jurisdictional in nature, and failure to comply will result in dismissal of an appeal. Id.
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). General Statutes § 8-8 (a) (1) defines an aggrieved person to include "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." In the present appeal, the plaintiffs allege that they are aggrieved "in that they own land abutting the land subject to the application for the proposed variance." (Appeal, ¶ 3.) Therefore, the plaintiffs have pleaded aggrievement. With respect to proof of aggrievement, at the trial, this court found that the plaintiffs were aggrieved. Therefore, a finding of aggrievement may enter.[2]
General Statutes § 8-8 (b) provides in pertinent part that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Notice of the decision by the Board was published in the News-Times on either May 13, 1996, or May 15, 1996.[3]
(Complaint, ¶ 2, Answer, ¶ 2; ROR, Item R.) On May 28, 1996, this appeal was commenced by service of process on the town clerk of Brookfield and upon the chairperson of the zoning board of appeals of Brookfield. Therefore, whether notice was published on May 13, 1996, or on May 15, 1996, service was properly made within the fifteen-day statutory time limit.
On an appeal from a zoning board's decision on a variance application, the trial court must determine whether the board's action was "arbitrary, illegal or an abuse of discretion." Bloomv. Zoning Board of Appeals, 233 Conn. 198, 206, 658 A.2d 559
(1995). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be CT Page 5113 disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Id. "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Id.
"Our law governing variances is well settled." Reid v. ZoningBoard of Appeals, 235 Conn. 850, 856, 670 A.2d 1271 (1996). General Statutes § 8-6 (a)(3) authorizes a zoning board of appeals "to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done . . . ."
"A variance is authority granted to the owner to use his property in a manner forbidden by the zoning regulations." (Internal quotation marks omitted.) Reid v. Zoning Board of Appeals, supra, 235 Conn. 857. "Thus, the power to grant a variance should be sparingly exercised." (Internal quotation marks omitted.) Id. "[U]nless great caution is used and variances are granted only in proper cases, the whole fabric of town- and city-wide zoning will be worn through in spots and raveled at the edges until its purpose in protecting the property values and securing the orderly development of the community is completely thwarted." (Citations omitted; internal quotation marks omitted.)Gregorio v. Zoning Board of Appeals, 155 Conn. 422, 427,232 A.2d 330 (1967).
The Supreme Court has interpreted General Statutes 8-6 (a) (3) "to authorize a zoning board of appeals to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Citations omitted; internal quotation marks omitted.) Bloom v.Zoning Board of Appeals, supra, 233 Conn. 207. "Proof of CT Page 5114 exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance." Id., 207-08.
Where a hardship "arises as the result of a voluntary act by one other than the one whom the variance will benefit, the board may, in the sound exercise of its liberal discretion, grant the variance." (Internal quotation marks omitted.) Pollard v. ZoningBoard of Appeals, 186 Conn. 32, 39, 438 A.2d 1186 (1982). However, "[v]ariances cannot be personal in nature, and may be based only upon property conditions." Reid v. Zoning Board ofAppeals, supra, 235 Conn. 857. "In fact . . . personal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance." (Citations omitted; internal quotation marks omitted.) Id. "A mere economic hardship or a hardship that was self-created . . . is insufficient to justify a variance . . . and neither financial loss nor the potential for financial gain is the proper basis for granting a variance." (Citations omitted.) Bloom v. Zoning Board of Appeals, supra,233 Conn. 208.
In the present action, the plaintiffs argue that O'Connor did not present evidence of a hardship, nor did the Board make a finding of hardship. Specifically, the plaintiffs argue that O'Connor did not demonstrate the manner in which the zoning regulations affect her property differently from other properties in the area and, that, furthermore, the only hardship that O'Connor would suffer, in the absence of a variance, is loss of financial gain. Alternatively, the plaintiffs claim that any hardship to O'Connor is self-created because she relied on an old and inaccurate survey. The plaintiff's final argument is that one of the Board members "should have refrained from participating" because the member "candidly admitt[ed] she was `in the same boat' as the applicant."
O'Connor, in response, argues that the Board "found that specific hardship existed in the application of the regulations to this particular property," and that "[t]his hardship does not sound in financial disappointment" but is "a question of the application of the zoning regulations, as they uniquely affect this piece of property thus preventing a legitimate use of this property which would otherwise be available to" O'Connor. O'Connor further argues that "[t]he hardship claimed — that the Defendants reasonably relied on a flawed 1939 survey and deed CT Page 5115 description in failing to seek subdivision earlier — is clearly `different in kind from that generally affecting properties in the same zoning district.'" Finally, O'Connor argues that she played no part in creating the errors in the survey relied on, and, therefore, the hardship was not self-inflicted.
In the present action, in order to determine whether the Board properly granted the variance, the trial court "must first consider whether the board gave reasons for its action." Bloom v.Zoning Board of Appeals, supra, 233 Conn. 208. "`Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations . . . . [This] applies where the agency has rendered a formal, official, collective statement of reasons for its action.'" Id., quoting Protect Hamden/North Haven fromExcessive Traffic Pollution, Inc. v. Planning ZoningCommission, 220 Conn. 527, 544, 600 A.2d 757 (1991). "Where a zoning board of appeals does not formally state the reasons for its decision, however, the trial court must search the record for a basis for the board's decision." Id. In the present action, although one member of the Board stated the reasons for his decision, (ROR, Item O: Transcript, p. 75), the Board did not state a collective, official reason for its action. Accordingly, the court must search the record as a whole to determine whether the evidence supports the Board's decision to grant the variance.Bloom v. Zoning Board of Appeals, supra, 233 Conn. 209.
The record reveals no evidence of a hardship sufficient to support the granting of a variance, and, as such, the court need not reach the plaintiffs' other grounds that any hardship was self-inflicted or that one of the Board members improperly participated in the decision.
In her application for a variance, O'Connor did not specify the hardship to her should she not be able to obtain the variance, but stated that she "[p]urchased in 1972 with documentation of size being 5.37 acres," and "[a] recent survey showed older maps incorrect." (ROR, Item A: Application.) At the public hearing, Attorney Jeffrey Reinen, testifying on behalf of O'Connor, explained that O'Connor had bought the property in 1972, according to a 1939 certified survey map, with the specific intention to subdivide the property, (ROR, Item O: Transcript, pp. 2-3), and that the survey had every appearance of being "a CT Page 5116 very accurate survey." (ROR, Item O: Transcript, p. 47.) Reinen further stated that "this is supposed to be a part of their retirement planning; it was envisioned all the way through," and added that O'Connor had "been paying taxes to the Town on 5.37 acres . . . ." O'Connor's husband, Charles O'Connor, reiterated these facts. (ROR, Item O: Transcript, pp. 10, 12.)
Also relevant to the issue of hardship, Reinen testified before the Board that the property in question is on the border between the R-80 and R-100 zoning districts (ROR, Item O: Transcript, p. 7), and cited to two cases, Belknap v. ZoningBoard of Appeals, 155 Conn. 380, 232 A.2d 922 (1967), andWhittaker v. Zoning Board of Appeals, 179 Conn. 650,427 A.2d 1346 (1980), for the proposition that the hardship in question was not self-created. (ROR, Item O: Transcript, pp. 47-48.) Reinen stated: "[s]o it's not always a self-created hardship when you're asking to subdivide a piece of property that is non-conforming. You have to look to the nature of the non-conformity. I mean, if I came in here and said, gee, I've got this piece of property in a two-acre zone. I've got 3.9 acres, let me subdivide it, that's a self-created hardship. I mean, that is brazen, bold-faced; that's a self-created hardship. Here you have an entirely different sequence of events that gives rise to a hardship situation." (ROR, Item O: Transcript, p. 48.)
The plaintiff, Walter Gurski, testifying at the hearing, raised the question as to whether "the O'Connors truly have a hardship or are they trying to create one so they can subdivide out a lot and have a larger value on their property. . . ." (ROR, Item O: Transcript, p. 31.) Attorney Backer, representing another abutting landowner, Janet Bender, also argued that "[t]here's no legal hardship to this land other than the fact that the gentleman, and I'm not saying it wasn't in good faith, made a mistake as to how much he thought he had . . . . [S]imply stating `for my retirement' or for economic gain, that I would like to create two lots and I'm a little bit short, is not a reason, it's not a legal hardship . . . ." (ROR, Item O: Transcript, p. 38.)[4]
After the public hearing was closed, the members discussed the application. (ROR, Item O: Transcript, pp. 62-77.) Board member Spinella expressed the opinion that "the unfortunate situation for the O'Connors was that they were under the impression that their property was a legal 5.3 piece of acreage and of course they were not made aware of the fact until November CT Page 5117 that they did not have the proper number of acres in order to properly subdivide this parcel into two 100,000 square foot lots." (ROR, Item O: Transcript, p. 62.) Board member Mix stated that "I have a level of concern that a gentleman who had reason to believe that he owned 5.3 acres is not able to use his property in the way that he chooses." (ROR, Item O: Transcript, p. 72.) Board member Barra cited several factors as weighing in favor of granting the application, including the favorable letters of some of the members, that other lots in the area are smaller than the 100,000 square foot minimum and that "[i]t is not a self-inflicted hardship. " (ROR, Item O: Transcript, pp. 73-75.) Board member Keller, who ultimately voted against granting the variance, expressed the dissenting opinion that any hardship was self-imposed, and that the O'Connor's property was not uniquely affected by the zoning regulations. (ROR, Item O: Transcript, p. 75.)
The facts, testimony and evidence submitted to and evaluated by the Board is analogous to the situation in Bloom v. ZoningBoard of Appeals, 233 Conn. 198, 658 A.2d 559 (1995). In Bloom,
the owners of a restaurant that was legally nonconforming as to setback obtained approval from the zoning enforcement officer and a building permit to add a stoop and a dormer to the nonconforming portion of the structure. Id., 200-01. Relying on the approval and the permit, the owners began construction. Five months later, however, the owners were issued a cease and desist order by the zoning enforcement officer because the additions violated the setback provisions of the zoning regulations. Id., 201. Thereafter, the owners applied to the zoning board of appeals for a variance, which was granted, and which was later upheld by the trial court on the principle of equitable estoppel. Id., 201-02.
On appeal, the Supreme Court rejected the application of equitable estoppel to the facts of the case and found that "there was no hardship according to the traditional analysis as it applies to variances." Id., 203. The Court held that "the only existent hardship resulted exclusively from the owners' reliance on the improperly granted building permit," and stated that the Court has "never held that such an administrative error creates a legal hardship . . . ." Id., 211. Moreover, the Court rejected any financial considerations, finding that "[f]inancial considerations are relevant only if the application of the regulation or ordinance practically destroys the value of the property for any use to which it may be put and the regulation or CT Page 5118 ordinance as applied to the subject property bears little relationship to the purposes of the zoning plan." Id., 210. InBloom, the Court found no evidence that the value of the property would be destroyed because the restaurant was "a viable business and a going concern." Id.
In the present appeal, the record indicates that the only evidence of a hardship that the Board considered is that O'Connor relied on a faulty survey map and that, consequently, O'Connor paid taxes on more land than she had and cannot now subdivide her property in the way she envisioned in order to plan for her retirement. If, as in Bloom reliance on an erroneous permit that was issued by a zoning authority cannot constitute a hardship sufficient to support a variance, then reliance on an inaccurate survey map, without more, also cannot constitute a sufficient hardship.
Moreover, that O'Connor will lose the income from the proposed subdivision is an economic consideration irrelevant to the determination of a hardship unless evidence shows that the value of the property would be destroyed by the application of the zoning regulations. Bloom v. Zoning Board of Appeals, supra,233 Conn. 208, 210. No such evidence was presented to the Board, nor did the Board find that O'Connor's property would be virtually worthless without the variance. To the contrary, evidence was presented that O'Connor had lived on the property for over twenty years and plans to continue living there. (ROR, Item O: Transcript, pp. 2-5, 10-12, 30-31.) Because the property has more than enough acreage to be a legally conforming lot, it has value, albeit probably less than it would have as two lots. Nevertheless, "[a] zoning regulation that prevents land from being used for its greatest economic potential . . . does not create the exceptional kind of financial hardship that we have deemed to have a `confiscatory or arbitrary' effect." Grillo v.Zoning Board of Appeals, 206 Conn. 362, 370, 537 A.2d 1030
(1988).
The cases that O'Connor and Attorney Reinen cite in support of granting the variance are distinguishable on their facts. O'Connor argues that, in Belknap v. Zoning Board of Appeals,155 Conn. 380, 384, 232 A.2d 922 (1967), the Supreme Court noted that "[w]here . . . the hardship arises as the result of a voluntary act by one other than the one whom the variance will benefit, the board may, in the sound exercise of its liberal discretion, grant the variance." However, such authority to grant a variance stems CT Page 5119 from the existence of a hardship, and in Belknap, the hardship arose because the entire lot in question was undersized and could not be built on or sold without a variance, thereby rendering the property virtually worthless.[5] Id., 383. By contrast, in the present action, the lot in question is of a legal size and has a legally conforming house already on it.
In Whittaker v. Zoning Board of Appeals, 179 Conn. 650,427 A.2d 1346 (1980), the Supreme Court upheld the decision of a zoning board of appeals granting a variance from minimum lot size requirements to allow the property owner to subdivide the parcel of land into two lots. Significantly, however, the Court based its decision on the fact that the town planning and zoning commission had already designated a road to pass directly through the lot in question, and, thus, the property was going to be subdivided eventually with or without the owner's approval. Id., 658-61. More importantly, the owner's variance was granted only upon the condition that the proposed road was actually built, and the Supreme Court upheld this condition. Id., 659. No such factual situation exists in the present action.
Finally, O'Connor cites to Osborne v. Zoning Board ofAppeals, 41 Conn. App. 351, 675 A.2d 917 (1996). In Osborne, an owner of property relied on a survey map completed by a land surveyor hired by the owner's architect. Id., 352-53. The land surveyor erred in his calculations of the setback requirements, but "[t]he error was discovered only after the construction was substantially complete." Id. The zoning board of appeals granted the owner's application for a variance from the setback requirements, and this action was later upheld by the Supreme Court. Id., 353, 355. The Court based its decision on the board's conclusions that "the house had already been constructed and strict enforcement would cause undue hardship . . ." Id., 353, and then found that the self-created hardship rule was inapplicable because the owner had no control over the error in the survey map. Id., 354-55.
The present matter is factually similar to Osborne in that evidence was presented to the Board, and the Board found that the error in the survey map was not attributable to O'Connor. (ROR, Item O: Transcript, pp. 2, 44, 47-49, 65-67, 72, 75-77.) Nevertheless, the present action is distinguishable on two grounds. First, O'Connor has not yet made any improvements to the property and, thus, has no hardship comparable to that in theOsborne case. Second, the analysis of the self-inflicted hardship CT Page 5120 rule is inapplicable here, as there has been no threshold evidence of the legally cognizable hardship which may or may not be self-created. See Bloom v. Zoning Board of Appeals, supra,233 Conn. 207-08 ("[p]roof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance.").
Therefore, since the hardship prong of the variance test has not been met, there is no need to address whether the variance would substantially affect the comprehensive zoning plan. See generally Bloom v. Zoning Board of Appeals, supra, 233 Conn. 207. For the reasons set forth above, the court sustains the plaintiffs' appeal. Judgment may enter accordingly.
Grogins, J.