[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
FACTS
The defendant Claire Goss is the owner of adjoining parcels know as 132 Kelsey Place, Madison, and 156 Kelsey Place, Madison.
Prior to the reconfiguration of the property for purposes of making an application for zoning variances, 132 Kelsey Place consisted of 70,814 square feet (1.627 acres), with a residential dwelling on the property.
156 Kelsey Place consisted of 5,469.64 square feet, or .1256 acres (ROR L).
The residential structure located at 156 Kelsey Place at the time of the application, September, 2001, was uninhabitable, having been condemned in January of 1998.
The structure had been constructed during the 1930s, on the border of Long Island Sound.
Over the years, the beach front of the property had eroded, and at the time of the condemnation, the high water mark of Long Island Sound was under the structure (ROR 1, p. 7, 83).
The property owner submitted three applications to the defendant Madison Zoning Board of Appeals during 2001.
The initial application for variances concerned only the .1256 acres comprising 156 Kelsey Place.
After that application was denied by the defendant zoning board of appeals, based upon the size of the structure, the size of the lot, and the number of variances requested, the property owner decided to CT Page 13393 reconfigure 156 Kelsey Place, by incorporating a portion of 132 Kelsey Place into the lot.
Following the lot line revision, the enlarged 156 Kelsey Place consisted of 13,680 square feet, roughly two and one-half times the size of the original parcel.
A second application for variances, based upon the enlarged parcel, was submitted during the summer of 2001, and a public hearing was held.
The Madison Zoning Board of Appeals denied this request for variances, but did so "without prejudice."
The defendant Claire Goss submitted a third application on September 11, 2001, which included a redesign of the proposed residence.
The third application reduced the proposed height of the building, reduced the square footage of the proposed structure, and reduced the building coverage (ROR 1, p. 4).
The Madison Zoning Board of Appeals held a hearing on December 4, 2001.
The third application sought three variances.
A variance of § 2.7.1 of the Madison Zoning Regulations, which provides for a maximum building height of 26 feet on a lot 60 feet in width, was sought.
The proposed structure was 30 feet tall, including seven feet above grade, as required by the Federal Emergency Management Agency (FEMA) regulations, applicable to coastal property.
The second variance, concerning § 3.6 (f) of the regulations, requested a variance of the setbacks required of property located in an R-2 zone.
The board was asked to vary the 20 foot side yard setback, to allow for setbacks of 5.5 feet on the east side, and 10.5 feet on the west side of the property (ROR L, p. 3).
The final variance requested concerned § 2.17 of the zoning regulations.
That section mandates a 50 foot setback from a critical coastal resource. CT Page 13394
The proposed new structure is 41 feet from the high tide line, and the proposed septic system is 30 feet from the high tide line (ROR 5b, p. 2).
Based upon the lot line revision, no coverage variance was required.
At the December 4 public hearing, a letter was received from the Madison director of health, stating that the proposed septic system complies with the Public Health Code (ROR Ex. 1).
The locations of both the septic system, and the proposed dwelling, are limited by extensive wetlands on the property (ROR 1, p. 37-38).
The Connecticut Department of Environmental Protection (DEP) also commented on the proposal for purposes of coastal site plan review.
The DEP supported locating the structure as far as possible from Long Island Sound, and endorsed the requested variances (ROR Ex. 2, p. 3).
It was further suggested by state officials, that the existing house, including footings, piles and septic system, be removed, and dune restoration and enhancement be constructed.
At the conclusion of the public hearing, the commission voted unanimously (5-0) to grant the three requested variance.
The board, in its resolution, found that a hardship existed on the property, based upon the erosion which had taken place under the existing structure (ROR 2, p. 5; ROR 1, p. 77).
The board further conditioned its approval on compliance with the recommendation of DEP representative Margaret Welch, regarding removal of the existing house, coupled with dune restoration and enhancement.
From this decision, the plaintiff's Overshore Association, Inc., Patrick Noonan, and Adele Barnabei bring this appeal.
They claim that the defendant Claire Goss failed to demonstrate hardship, as a prerequisite to the granting of the variances.
They further argue that the board was without jurisdiction to hear the application, in light of the denial of August 14, 2001, concerning the same reconfigured parcel.
It is further alleged that the board's decision was arbitrary, illegal, and in abuse of its discretion. CT Page 13395
Prior to trial, the plaintiff Overshore Association, Inc. sought permission to withdraw from the appeal.
The withdrawal was approved, after hearing, based upon the representation that any claims the association may have are adequately represented by the remaining plaintiffs, Patrick Noonan and Adele Barnabei.
AGGRIEVEMENT
The plaintiff Patrick Noonan owns property located at 137 Overshore Drive West (Ex. 1), while the plaintiff Adele Barnabei is the owner of property at 155 Overshore Drive West (Ex. 2).
Both plaintiffs have owned their respective parcels throughout the time this appeal has been pending.
Both plaintiffs claim to be statutorily aggrieved by the action of the defendant Madison Zoning Board of Appeals.
In addition, the plaintiff Patrick Noonan claims to be classically aggrieved.
Section 8-8 (a) (1) of the Connecticut General Statues defines an aggrieved person to include one "owning land that abuts, or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
The phrase "any portion of the land involved in the decision" concerns the complete tract owned by the applicant, rather than the specific portion concerning the activity involved in a particular application.Hockberg v. Zoning Commission, 19 Conn. App. 357, 360 (1989). Courts have opted for the "bright line construction" of § 8-8 (a), in light of the importance attached to access to the courts. Caltabiano v. Planning Zoning Commission, 211 Conn. 662, 670 (1989).
The plaintiff Patrick Noonan claims to have measured from a telephone poll depicted on a map (ROR L), to a corner of the property which is the subject of the waiver application.
He testified that the distance is 52 feet, 3 inches from his property line.
The plaintiff Adele Barnabei testified that her property, shown on CT Page 13396 Exhibits A and B, is between 40 and 50 feet from the defendant's property.
This estimate is supported by an examination of the maps, which show that the distance is well within the 100 feet necessary to establish statutory aggrievement.
It is therefore found that both of the plaintiffs are statutorily aggrieved by the action of the Madison Zoning Board of Appeals, in approving the three variances.
The plaintiff Patrick Noonan further claims to be classically aggrieved by the board's action.
A party claiming to be classically aggrieved must produce evidence at trial which satisfies a well-established two-fold test: 1) the party must demonstrate a specific personal and legal interest in the decision appealed from, as distinct from a general interest such as concern of all members of the community as a whole, and 2) the party must show that the specific personal interest has been specifically and injuriously affected by the agency action. Primerica v. Planning Zoning Commission,211 Conn. 85, 93 (1989); Hall v. Planning Commission, 181 Conn. 442, 444
(1980).
Patrick Noonan claims that the construction of a house on the defendant's property will impair and interfere with his view of Long Island Sound, and will decrease the value of this property.
Although he cites no authority for the proposition that a view is a protected legal interest in property, he claims that the fair market value of his property will decrease $15,000 and $20,000.
While the owner of property can testify concerning the value or diminution in value of his property, and the cause of any decrease in value, Pesty v. Cushman, 259 Conn. 345, 364 (2002); the court would be unable to make a finding of classical aggrievement, based upon that testimony, standing alone, and uncorroborated.
However, because statutory aggrievement has been established, as to both of the remaining plaintiffs, it is unnecessary to determine the issue of classical aggrievement claimed by the plaintiff, Patrick Noonan. McNally v. Zoning Commission, 225 Conn. 1, 8 (1993).
STANDARD OF REVIEW
CT Page 13397
The powers of a municipal zoning board of appeals are derived from § 8-6 (3) of the General Statutes.
Acting pursuant to that section, a zoning board of appeals has the power:
 " (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent, and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such by-laws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done, and the public safety and welfare secured . . ."
In discharging its responsibilities, a zoning board of appeals is endowed with liberal discretion, and its decisions are subject to review by a court only to determine whether the board acted arbitrarily, illegally or unreasonably. Pleasant Farms Development, Inc. v. ZoningBoard of Appeals, 218 Conn. 265, 269 (1971); Torsiello v. Zoning Board ofAppeals, 3 Conn. App. 47, 50 (1984).
A court should not usurp the function and prerogatives of a zoning board of appeals by substituting its judgment for that of the board, where an honest judgment has been reasonably and fairly exercised after a full hearing. Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206
(1995); Molic v. Zoning Board of Appeals, 181 Conn. 159, 164 (1989).
The burden of demonstrating that the board has acted improperly, is upon the party seeking to overturn the board's decision. Whittaker v.Zoning Board of Appeals, 179 Conn. 650, 654 (1980); Adolphson v. ZoningBoard of Appeals, 205 Conn. 703, 707 (1988).
Where a zoning board of appeals, as required by § 8-7[1] of the General Statutes, has stated reasons for its action, a reviewing court need only determine if any reason given is supported by the record.Daughters of St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53,56 (1988).
RECORD DEMONSTRATED THAT THE BOARD PROPERLY FOUNT) HARDSHIP PERMITTINGVARIANCES
CT Page 13398
In order to grant a variance, a zoning board of appeals must find that two conditions have been satisfied: 1) the variance must be shown not to affect substantially the comprehensive plan, and 2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship, unnecessary to the carrying out of the general purposes of the zoning plan. Francini v. Zoning Board of Appeals, 228 Conn. 785, 790
(1994); Smith v. Zoning Board of Appeals, 228 Conn. 785, 790 (1994);Smith v. Zoning Board of Appeals, 174 Conn. 323, 326 (1978).
A variance runs with the land, Reid v. Zoning Board of Appeals,235 Conn. 850, 858 (1996); § 8-6 (b), C.G.S., and must be based only upon property conditions. Garibaldi v. Zoning Board of Appeals,163 Conn. 235, 239 (1972).
The identity of the applicant, is irrelevant. Dinan v. Board of ZoningAppeals, 220 Conn. 61, 66-67 (1991).
A variance can not be granted where it impairs the integrity of the comprehensive plan. Whittaker v. Zoning Board of Appeals, supra, 656. The comprehensive plan consists of the zoning regulations themselves. Burnhamv. Planning Zoning Commission, 189 Conn. 261, 267 (1983).
The record reveals that the property for which the variances are sought is located in an R-2 (Residential) zone, in which single family residences are a permitted use.
The defendant's proposed use of the property as a residence is consistent with other uses in the area, including the plaintiffs' properties.
The reconfigured lot is larger than the lot on which a dwelling was constructed in the 1930s, and no coverage variance was necessary in order to construct the proposed dwelling.
The record therefore supports the finding that the variances requested will not substantially affect the comprehensive plan.
Concerning the second requirement, hardship, the defendant Claire Goss must show that the zoning regulations work a distinct hardship on her property, not merely a general hardship on the neighborhood at large.Malstrom v. Zoning Board of Appeals, 152 Conn. 385, 390 (1965); Finch v.Montanari, 143 Conn. 542, 546 (1956).
A claimed hardship must arise from conditions different from those CT Page 13399 generally affecting properties in the same zoning district, and must be imposed by conditions outside the property owner's control. Norwood v.Zoning Board of Appeals, 62 Conn. App. 528, 533 (2001).
The Madison Zoning Board of Appeals found that a hardship existed, because the property in question had been uniquely subjected to natural forces which eliminated a substantial portion of the beach in front of the structure.
The dwelling, once comfortably situated on the lot, was condemned in 1998, when it became uninhabitable due to the rising waters of Long Island Sound.
Furthermore, the natural topography of the property reveals wetlands, and the proximity to Long Island Sound renders it subject to FEMA regulations.
The record supplies substantial evidence of the erosion of the defendant's property, a fact echoed by the plaintiffs in their brief (page 13), where they acknowledge that the record does not reflect similar problems on neighboring parcels.
The hardship which the board found is supported in the record, and is not a hardship arising out of any acts of the defendant, Claire Goss.
Because the hardship arose from the effects of the forces of nature on the defendant's property, it resulted from an unusual characteristic of the property, not an act of the property owner. Belknap v. Zoning Boardof Appeals, 155 Conn. 380, 383 (1967).
A finding of hardship has been upheld, based upon the size of a lot, coupled with the location of a well, and septic system on the property.Stillman v. Zoning Board of Appeals, 25 Conn. App. 631, 636 (1991).
A hardship brought about by the forces of nature, rather than by artificial improvements produced by human beings, is more compelling, than the hardship found in Stillman.
Based upon all of the evidence presented, the record justifies the granting of the minimal four-foot height variance, the setback variance, and the side yard variances.
The Madison Zoning Board of Appeals, based upon the information before it, including erosion of the property, topography, and requirements imposed upon coastal properties, was justified in its finding of CT Page 13400 hardship.
The hardship applicable to the property is not diminished, because the defendant Claire Goss added acreage to her property, thus minimizing the number and character of the variances necessary to construct a single family resident.
THE BOARD HAD AUTHORITY TO ACT ON THE APPLICATION
The plaintiffs claim that the defendant Madison Zoning Board of Appeals lacked jurisdiction to entertain the defendant's application, because a virtually identical application had been denied without prejudice in August, 2001.
They further argue that the board abused its discretion, and sanctioned the expansion of a non-conforming use and structure.
Both claims are without merit.
Section 8-6 (a) of the General Statues addresses the issue of a zoning board of appeals, faced with repeated applications seeking relief from the impact of zoning regulations on a particular property.
The statute provides:
 "no such board shall be required to hear any application for the same variance or substantially the same variance for a period of six months after a decision by the board or by a court on an earlier application."
The clear language of the statue does not mandate that a zoning board of appeals wait six months between applications.
The statute does not "require" a board to hear a similar application, within the time specified.
In this case, the defendant zoning board of appeals had ample evidence before it, to support a finding that the third application, and the second application, were not the same.
The second application proposed a larger structure, which was taller, thus requiring a greater height variance.
Any determination concerning whether two applications are substantially CT Page 13401 similar, is one properly committed to the discretion of the agency.Hotchkiss v. grove Assn., Inc. v. Water Resources Commission, 161 Conn. 50,58 (1971); Fiorello v. Zoning Board of Appeals, 144 Conn. 275, 279
(1957).
Even without considering the provisions of § 8-6 (a), a zoning board of appeals may revoke or reverse a former action, if there has been a change in conditions, or new considerations, materially affecting the subject matter, have intervened. Bright v. Zoning Board of Appeals,49 Conn. 698, 705 (1962); Fiorello v. Zoning Board of Appeals, supra, 279.
The defendant Madison Zoning Board of Appeals properly considered and acted upon the application for variances, after a full and fair hearing.
The defendant did not seek to reconstruct the existing building over the identical footprint, or to maintain a use of the property which was not permitted by the zoning regulations.
The reconfigured property, located in an R-2 zone, is in an area where single family residences are permitted, and presumably encouraged.
Furthermore, the defendant Claire Goss was not seeking to reconstruct the dwelling condemned in 1998, and rendered uninhabitable over time by the erosive forces of nature.
Rather, she sought permission to construct a residential dwelling on a reconfigured parcel, which reduced the nonconformity existing on the 5,469 square foot original lot.
The lot line recission did not constitute a "subdivision" within the meaning of § 8-18[2] of the General Statutes, and did not require the approval of another municipal agency. Goodridge v. Zoning Board ofAppeals, 58 Conn. App. 760, 765-66 (2000).
Because the board's grant of the three variances finds ample support in the record, the appeals of the plaintiffs Patrick Noonan and Adele Barnabei are dismissed.
 ___________________ Radcliffe, J